IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CHICAGO PARK DISTRICT, an Illinois Municipal Corporation<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE CHICAGO BEARS FOOTBALL CLUB, Inc., a Delaware Corporation, and THE CHICAGO BEARS STADIUM, LLC, a Delaware Limited Liability Company,<br><br>　　　　Defendants. | Case No. 06-CV-3957<br><br>Honorable Blanche M. Manning<br>Magistrate Judge Schenkier |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO STAY PENDING ARBITRATION**

Eight months ago, the Chicago Parks District ("CPD") and the Chicago Bears signed an agreement that committed their dispute regarding pat-down searches at Bears' home games to arbitration. Three months ago, the parties submitted the dispute to the American Arbitration Association and the parties selected an arbitrator. Reneging on its contractual commitment to arbitrate, the CPD apparently now seeks to circumvent the arbitration and to have this Court issue an advisory opinion on a question of constitutional law that is not ripe for decision.

Even if the CPD's complaint satisfied the "Case and Controversy" requirement, this Court would still lack subject matter jurisdiction because the parties are both citizens of Illinois and the only cognizable claim -- who should pay for certain security costs at Soldier Field -- arises under state contract law. Accordingly, the complaint should be dismissed;

alternatively, 9 U.S.C. § 3 mandates that this Court stay the action pending completion of the pending arbitration.

## I.  The Allegations

Plaintiff the CPD, an Illinois municipal corporation, is the owner and operator of Soldier Field, where the Chicago Bears, an NFL franchise, play their home games. [Complaint, ¶ 2.]  Defendants The Chicago Bears Football Club, Inc., and the Chicago Bears Stadium LLC (collectively the "Bears") have their principal places of busines in Illinois. [Complaint, ¶ 3.l]

On August 1, 2001, the CPD entered into a Permit and Operating Agreement providing for the Bears' use of Soldier Field (the "POA", attached hereto as Exhibit 1). [Complaint, ¶ 7.]  Under the POA, the CPD is "responsible for the performance and payment of Game Day Expenses."  [Exhibit 1, § 22.2.1.]  In particular, on Game Days the CPD is "responsible for the performance and payment of security and crowd control." [Exhibit 1, § 25.1.]

In 2005, the NFL required that security pat-downs, designed to detect and exclude improvised explosive devices carried by terrorists, be performed at all regular season NFL games. [Complaint, Exhibit B at 4 (August 18, 2005 Memorandum from Commissioner Paul Taglibue).]  The Bears requested that the CPD conduct the security pat-downs on Game Days at Soldier Field. [Complaint, ¶ 8.]  The CPD refused to do so; it asserted that it was not required to comply with the NFL mandate. [Complaint, ¶ 9.]  A Provisional Agreement, reached December 8, 2005, resolved the issue for the balance of the 2005 NFL Season only, requiring the Bears to hire, at their cost and expense, a private security firm to perform the pat-downs at Soldier Field. [Exhibit 2, ¶¶ 1,2.]

Because the Provisional Agreement did not permanently resolve the parties' dispute, the parties agreed to submit their dispute to Expedited Arbitration:

> The parties acknowledge they are in disagreement as to whether the Chicago Park District must provide pat down security checks at Chicago Bears home games pursuant to the requirements of the POA and must bear the costs of said pat down security checks. The parties agree to continue negotiations in good faith and in the event no resolution is reached then this disagreement may be submitted by either party … to resolution by Expedited Arbitration in accordance with the provision of the POA … and each party agrees to be bound by the results of such Expedited Arbitration and to not contest or oppose Expedited Arbitration in any respect.

[Exhibit 2, ¶ 5.][1]

After further negotiations failed, the Bears filed a timely demand for arbitration. [Complaint, ¶ 11; Complaint, Ex. A at 2; Exhibit 3 (February 16, 2006 Letter from Gary Mowder to Richard Burke)]. On July 5, 2006, the parties selected an arbitrator. Days before the arbitration proceeding was to commence, the CPD filed this suit.

The CPD alleges "that the Fourth Amendment prohibits it, as a municipal corporation, from conducting and/or using taxpayer funds to pay for the demanded pat-down searches at Soldier Field." [Complaint, ¶ 12.] The CPD further alleges that "[b]ecause of the Bears' continuing demand for arbitration, an actual, substantial and justifiable constitutional dispute exists, which this Court should adjudicate." [Complaint, ¶¶ 1, 5 (asserting jurisdiction under 28 U.S.C. § 1331).] The sole claim of the complaint alleges:

> [T]his matter presents a ripe constitutional issue that stems from an actual, substantial, and justicable controversy between the parties -- whether the Bears' continuing demand that the CPD, a municipal

---

[1] The CPD relies heavily on the fact that on November 2, 2005, a Florida state court issued an injunction against the Tampa Sports Authority. [Complaint, ¶¶ 15-17.] But the circumstances in Tampa differ substantially from Chicago and, moreover, the CPD plainly knew about that ruling when it agreed on December 8, 2005 to arbitrate its dispute with the Bears.

>corporation, conduct, using taxpayer funds, pat-down searches for the upcoming 2006 NFL season (which begins in August), of all persons entering Soldier Field, a public venue owned and operated by the CPD, violates the Fourth Amendment's prohibition against the government searching individuals without a warrant or a particularized suspicion of wrong-doing.

[Complaint, ¶ 21.] The CPD seeks "judgment … declaring that the Fourth Amendment prohibits the CPD from conducting the pat-down searches demanded by the Bears of all persons entering Solider Field for Bears games at any time." [Complaint, ¶ 22.]

## I. The Court Does Not Have Subject Matter Jurisdiction Over The Claim Asserted in the Complaint.

The issue presented by the Complaint is simply not ripe; if the CPD prevails in the arbitration, there will be no constitutional issue for this Court to resolve. And, of course, a "federal court must not rule on constitutional issues where other, nonconstitutional dispositive grounds are available." Santa Fe Southern Pacific Corp. v. Central States, Southeast and Southwest Areas Pension Fund, Civ. No. 88-C-6999, 1990 WL 358565 (N.D. Ill. Jul. 17, 1990) (dismissing action in favor of arbitration because the "results of arbitration unquestionably may moot the constitutional issues raised by plaintiff."). See also Spector Motor Service v. McLaughlin, 323 U.S. 101, 105 (1944) (holding that federal courts should avoid resolving disputes on constitutional grounds unless "such adjudication is unavoidable."); Transport Motor Express, Inc. v. Central States, Southeast and Southwest Pension Fund, 724 F.2d 575, 577-78 (7th Cir. 1984) (reversing district court because it failed to consider potentially dispositive nonconstitutional issues, including arbitration, before reaching plaintiff's constitutional claims).

That having been said, even if the dispute were ripe, this Court would still lack subject matter jurisdiction over the complaint. The underlying claim arises from state contract obligations of which no federal right or privilege is an essential element. Accordingly, the

pleadings fail to present a federal question and the Bears' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction must be granted.

In considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court must accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. Transit Exp., Inc. v. Ettinger, 246 F.3d 1018, 1023 (7th Cir. 2001). The plaintiff has the burden of demonstrating subject matter jurisdiction. Western Transp. Co. v. Couzens Warehouse & Distributors, Inc., 695 F.2d 1033, 1038 (7th Cir. 1982). But the court may also look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. Grafon Corp. v. Hauserman, 602 F.2d 781, 783 (7th Cir. 1979). If the court concludes that it does not have jurisdiction, it must dismiss the case without reaching the merits. Shockley v. Jones, 823 F.2d 1068, 1070 (7th Cir. 1987).

### A. There Is No Subject Matter Jurisdiction Because The Hypothetical Dispute Does Not Meet The Constitutional "Case and Controversy" Requirement.

The CPD seeks an advisory opinion, arguing that "the overriding constitutional issue … must be decided before the issue of who, if anyone, under the POA is required to conduct and pay for the pat-down searches." [Complaint, ¶ 18] Put differently, the CPD asks this Court to determine whether the CPD *may* pay for the pat-downs *before* the arbitrator determines which party is contractually obligated to pay.

Federal courts lack power to render such "advisory opinions," as courts may "resolve a 'real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (quoting Aetna Life

Ins. Co. v. Haworth, 300 U.S. 227 (1975)).  This requirement "keeps federal courts in the business of resolving existing legal disputes and out of the business of offering advice on the legality of a proposed course of action."  Deveraux v. City of Chicago, 14 F.3d 328, 330 (7th Cir. 1994).  Here, the CPD asks this Court to hold that *if* the arbitrator finds that the CPD is responsible for pat-down costs, the CPD cannot perform that responsibility.  That is precisely the kind of relief that the Supreme Court has repeatedly held the federal courts may not grant:  "an opinion advising what the law would be upon a hypothetical state of facts."  Preiser, 422 U.S. at 401.  The Supreme Court's caution is of even greater importance where the advisory opinion is on a constitutional issue that only *might* arise in an arbitration.  See Robbins v. Lady Baltimore Foods, Inc., 868 F.2d 258 (7th Cir. 1989) (concluding that district court erred by reaching constitutional issue that might have been mooted by arbitration).

In short, the CPD seeks resolution of "a controversy that has not yet arisen and may never arise."  Wisconsin Right to Life, Inc. v. Paradise, 138 F.3d 1183, 1187 (7th Cir. 1998).  This would be the epitome of an advisory opinion that the Court lacks jurisdiction to issue.[2]

> **B.    Because The Claim at Issue Arises Under State Contract Law, There is No Subject Matter Jurisdiction.**

Even if the complaint presented a real, rather than a contingent, controversy, the complaint would fail to allege facts remotely sufficient to establish this Court's jurisdiction.  The core dispute between the parties is whether the CPD is contractually obligated to provide and/or

---

[2]    In addition, it bears emphasis that the complaint contains no allegation of actual or imminent injury to establish the CPD's standing to bring suit challenging the patdown policy. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  Rather, the CPD alleges only that because of the "Bears' continuing demand for arbitration, an actual, substantial and justifiable constitutional dispute exists." [Complaint, ¶ 19.]  But alleging the existence of a demand is not an allegation of an injury.

to pay for pat-downs at Soldier Field.  [Complaint, ¶ 8.]  The CPD contends that *if* it bears that obligation under the contract, the obligation cannot be enforced due to constitutional concerns. [Complaint, ¶¶ 9, 12.]  Such allegations do not *state a claim* arising under federal law and cannot establish federal question jurisdiction.  28 U.S.C. § 1331 (2006).

To determine whether a complaint states a cause of action arising under federal law, courts apply the "well-pleaded complaint rule."  Oklahoma Tax Commission v. Graham, 498 U.S. 838 (1989).  The jurisdictional issue "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose."  Taylor v. Anderson, 234 U.S. 74, 75 (1914).  To establish federal question jurisdiction, a right or immunity created by the Constitution or laws of the United States must be an *essential* element of the claim giving rise to the dispute.  Gully v. First Nat. Bank, 299 U.S. 109, 112 (1936).  Here, the claim giving rise to the dispute is the *Bears' claim* that the POA obligates the CPD to perform and to pay for pat-downs at Solider Field.  [Complaint, ¶ 8.]  There is no federal element to the Bears' claim.

The fact that the issue here is presented in the form of a request for declaratory relief does not change the analysis.  The Declaratory Judgment Act does not enlarge the scope of federal courts' jurisdiction.  Skelley Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950). Because the governing inquiry is whether the underlying *claim* contains a federal element, not whether the parties' *dispute* has a federal component, federal courts consistently analyze whether the federal issue would be apparent on the face of a complaint by the natural plaintiff, here the Bears.  See Skelly Oil, 339 U.S. at 673 (analyzing the claim of the declaratory defendant); Ceres Terminals, 54 F.3d at 185 (concluding that declaratory defendant could not have brought suit in

federal court by alleging that the declaratory plaintiff would invoke a federal defense). Just as the Bears could not seek in federal court to enforce the POA by anticipating the CPD's federal defense, the CPD cannot "use the Declaratory Judgment Act as *entrée* by assuming the role of plaintiff." Ceres Terminals, 54 F.3d at 185.

The sole alleged basis for this Court's jurisdiction is the CPD's anticipated *defense* to the Bears' contract claim. Whether federal law may be an element of the defendant's asserted defenses (or, in this case, the declaratory plaintiff's defenses to the natural underlying claim) is irrelevant. Taylor, 234 U.S. at 75-76. Indeed, "even if both parties admit that the [federal] defense is the only question truly at issue in the case," federal jurisdiction is still absent. Franchise Tax Bd. of the State of California v. Constr. Laborers Vacation Trust for So. Calif., 463 U.S. 1, 14 (1983).

A case arises under federal law "only when the claim for relief depends in some way on federal law 'unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.'" Ceres Terminals, Inc. v. Indus. Commission of Illinois, 54 F.3d 183, 185 (7th Cir. 1995) (quoting Taylor, 234 U.S. at 75-76). And courts consistently reject efforts by plaintiffs, like the CPD here, to obtain federal jurisdiction by artfully pleading a federal defense in the form of a request for declaratory relief. See Ceres Terminals, 54 F.3d at 185.

Controlling Seventh Circuit authority confirms that the CPD's allegations fail to meet jurisdictional requirements. See City of Beloit v. Local 643 of Am. Fed'n. of State, County and Mun. Employees, AFL-CIO, 248 F.3d 650, 652 -53 (7th Cir. 2001). In City of Beloit, a municipality, seeking to avoid a demand for arbitration by a collective bargaining unit, brought a declaratory judgment action seeking a declaration that federal law protected certain employment

decisions from arbitration.  Id. at 652.  The Seventh Circuit rejected the municipality's arguments because if the complaint had been filed by the collective bargaining unit, the federal statute "would be raised only as a defense, and so would not satisfy the well-pleaded complaint rule." Id. at 653.

Faced with imminent binding arbitration, the CPD filed this action in an apparent effort to circumvent and/or delay the dispute resolution procedure called for by the parties' contract.  Because the CPD's complaint contains no cognizable claims under federal law, this Court is without jurisdiction and the Bears' motion to dismiss must be granted.

## II.     In the Alternative, the Present Action Must Be Stayed Pending Arbitration.

Even if it were to conclude that it has jurisdiction over the pleaded claim, this Court *must* stay the action and permit the arbitration to go forward.  9 U.S.C. § 3 (2006); C. Itoh & Co., Inc. v. Jordan International Co., 552 F.2d 1228, 1231 (7th Cir. 1977) (concluding that a court must stay the proceedings before it if the requirements of 9 U.S.C. § 3 are met).

In considering a motion to stay pending arbitration, the scope of the court's review is limited to "only issues relating to the making and performance of the agreement to arbitrate."  Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 404 (1967).  If the arbitration agreement is valid, the court lacks "power to or discretion to address the issues raised in the complaint but must order arbitration."  Merit Ins. Co. v. Leatherby Ins. Co., 581 F.2d 137, 142 (7th Cir. 1978).  The CPD does not allege that the arbitration agreement is invalid and a stay here is mandatory.

On December 8, 2005, the parties entered into a Provisional Agreement that provided for pat-downs to be conducted while the parties continued negotiations.  [Exhibit 2, ¶ 5.]  The Provisional Agreement described the parties' dispute as being "whether the Chicago

Park District must provide pat down security checks at Chicago home games pursuant to the requirements of the POA and must bear the costs of said pat down security checks." [Id.]

Moreover, the Provisional Agreement demonstrates that the parties viewed the constitutionality of the pat-downs as within the scope of their dispute. For example, the Provisional Agreement states that the CPD would permit the Bears to hire a private security service "without agreeing to the need for or legality of pat down security checks." [Id., ¶ 1.] It also requires the Bears to maintain insurance coverage for claims arising from "any violation of any alleged constitutional and/or contract rights." [Id., ¶ 3.] The Bears were also to provide indemnification for any losses based upon "the unconstitutionality or illegality of the pat down searches and/or the Pat Down policy." [Id., ¶ 4.] The parties agreed to negotiate in good faith to resolve the dispute, but provided that in the event "no resolution is reached then this disagreement may be submitted by either party … to resolution by Expedited Arbitration in accordance with the provision of the POA, even though the disagreement would not otherwise be subject to Expedited Arbitration under the POA, and each party agrees to be bound by the results of such Expedited Arbitration and to not contest or oppose Expedite Arbitration in any respect." [Id.]

The Bears initiated arbitration on April 12, 2006, by filing a formal demand for arbitration. Because there is no dispute that the parties have a written agreement to arbitrate, and because the Bears are not in default of that agreement to arbitrate, the Bears' motion to stay must be granted. See C. Itoh & Co., 552 F.2d at 1231.

Further, even if the court were to conclude that some portion of the parties' dispute is non-arbitrable, judicial economy still counsels for a stay. J.D. Marshall Int'l, Inc. v. Redstart, Inc., 656 F. Supp. 830, 834 (N.D. Ill. 1987) (concluding that where the "results of the

arbitration proceedings may simplify or even resolve the proceedings" a stay was warranted). Id. at 834. Here, there are even more compelling reasons for a stay in light of the fact that, depending on the outcome of the arbitration, the court may not need to resolve a constitutional issue.

**III.    Conclusion**

For the reasons stated, the Bears respectfully request that the court grant their motion to dismiss for lack of subject-matter jurisdiction or, in the alternative, stay these proceedings pending arbitration.

Dated: July 31, 2006                                  Respectfully submitted,

                                                      THE CHICAGO BEARS FOOTBALL
                                                      CLUB, INC. AND THE CHICAGO BEARS
                                                      STADIUM, LLC

                                                      By: */s/ Patricia J. Fokuo*
                                                      John N. Scholnick (ARDC #3125176)
                                                      Jay Williams (ARDC # 6195934)
                                                      Patricia J. Fokuo (ARDC #6277431)
                                                      SCHIFF HARDIN LLP
                                                      6600 Sears Tower
                                                      Chicago, Illinois 60606
                                                      (312) 258-5500 (telephone)
                                                      (312) 258-5600 (facsimile)

## CERTIFICATE OF SERVICE

I, Patricia J. Fokuo, an attorney, hereby certify that I have served copies of the foregoing **Notice of Motion, Motion, and Memorandum In Support Of Defendants' Motion To Dismiss The Complaint Or, In The Alternative, To Stay Pending Arbitration**, by electronic filing and by Federal Express, overnight delivery, to the persons listed below on this 31st day of July, 2006.

Richard W. Burke
George J. Lynch
Aaron H. Stanton
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Ave., 22nd Floor
Chicago, Illinois 60611-3607
Facsimile: 312-840-7900

*/s/ Patricia J. Fokuo*
Patricia J. Fokuo

CH2\ 1488326.1