# EXHIBIT 1
# Part 1

CH1\ 4014096.1

Dockets.Justia.com

\*

# PERMIT AND OPERATING AGREEMENT

by and among the
CHICAGO PARK DISTRICT,
CHICAGO BEARS FOOTBALL CLUB, INC.,
and CHICAGO BEARS STADIUM LLC
dated as of
August 1, 2001

## TABLE OF CONTENTS

ARTICLE 1. DEFINITIONS ...................................................................................2
1.1  Acquiror ....................................................................................................2
1.2  Action .......................................................................................................2
1.3  Adaptive Reuse .......................................................................................2
1.4  Affiliate .....................................................................................................2
1.5  Amusement Tax .......................................................................................2
1.6  Arbitration ................................................................................................2
1.7  Artificial Turf ............................................................................................2
1.8  Architect ...................................................................................................2
1.9  Authority ...................................................................................................2
1.10 Authority Capital Improvements Subsidy ................................................2
1.11 Basic Repair and Maintenance ...............................................................2
1.12 Bears .........................................................................................................2
1.13 Bears Administrative Offices ...................................................................3
1.14 Bears Club Seat Licensee ......................................................................3
1.15 Bears Default ...........................................................................................3
1.16 Bears Games ...........................................................................................3
1.17 Bears Hall of Fame ..................................................................................3
1.18 Bears Locker Room ..................................................................................3
1.19 Bears Non-Terminating Default ...............................................................3
1.20 Bears PSL Agreements ...........................................................................3
1.21 Bears PSL Program .................................................................................3
1.22 Bears Related Merchandise ....................................................................3
1.23 Bears Retail Store ...................................................................................3
1.24 Bears Sports Bar/Restaurant ..................................................................3
1.25 Bears Storage Areas ...............................................................................3
1.26 Bears Suite Licensee ..............................................................................3
1.27 Bears Terminating Default .......................................................................3
1.28 Bears Termination Remedy ......................................................................3
1.29 Bears Ticket Holders ...............................................................................3
1.30 Bowl .........................................................................................................3
1.31 Beer Garden .............................................................................................4
1.32 Capital Improvements ..............................................................................4
1.33 Capital Improvement Fund .......................................................................4
1.34 Capital Improvement Fund Sources ........................................................4
1.35 Capital Improvement Program .................................................................4
1.36 Casualty ...................................................................................................4
1.37 Certificate of Occupancy .........................................................................4
1.38 City ...........................................................................................................4
1.39 Club Capital Improvements .....................................................................4
1.40 Club Excluded Occurrences ....................................................................4
1.41 Club Lounge Area ....................................................................................4
1.42 Club Misuse .............................................................................................4
1.43 Club-Related Event ..................................................................................4
1.44 Club Seats ...............................................................................................4

1.45    Club Seat Area ...................................................................................5
1.46    Club Seat License ..............................................................................5
1.47    Club Signage ......................................................................................5
1.48    Club Termination Notice .....................................................................5
1.49    Club Use Period .................................................................................5
1.50    Club Use Rights .................................................................................5
1.51    Colonnades .......................................................................................5
1.52    Colonnades Capital Improvements ....................................................5
1.53    Communication ..................................................................................5
1.54    Concessionaires ................................................................................5
1.55    Concession Areas ..............................................................................5
1.56    Concessions ......................................................................................5
1.57    Condemnation ....................................................................................5
1.58    Condemnation Award .........................................................................5
1.59    Confirmation Conditions .....................................................................5
1.60    Confirmed Schedule Request .............................................................5
1.61    Constitutional Obligations ..................................................................5
1.62    Construction Documents .....................................................................6
1.63    Construction Manager .........................................................................6
1.64    Corporate Parties ...............................................................................6
1.65    CPD Default .......................................................................................6
1.66    CPD Excluded Occurrences................................................................6
1.67    CPD Non-Terminating Default.............................................................6
1.68    CPD Terminating Default ....................................................................6
1.69    CPD Termination Remedy ..................................................................6
1.70    CPD's Specifically Reserved Use Rights ............................................6
1.71    CPI .....................................................................................................6
1.72    Designated Broadcasters ...................................................................6
1.73    Developer ...........................................................................................6
1.74    Development Assistance Agreement ..................................................6
1.75    Development Agreement......................................................................7
1.76    Direct Competitor ...............................................................................7
1.77    Disabled Patrons ...............................................................................7
1.78    Drawings ............................................................................................7
1.79    Employment Taxes..............................................................................7
1.80    Engineering Reports...........................................................................7
1.81    Entitlement Rights ..............................................................................7
1.82    Environmental Area.............................................................................7
1.83    Environmental Laws ...........................................................................7
1.84    Escrow Account...................................................................................8
1.85    Ethnic Marketers ...............................................................................8
1.86    Event ..................................................................................................8
1.87    Excluded Occurrences .......................................................................8
1.88    Exclusive Signage Product Categories ..............................................8
1.89    Expeditious Arbitrator .........................................................................8
1.90    Expedited Arbitration ..........................................................................8
1.91    Expedited Arbitration Request.............................................................8
1.92    Expedited Ruling ................................................................................8
1.93    Extension Option ................................................................................8

1.94    Extension Terms ........................................................................................8
1.95    Facility ......................................................................................................8
1.96    Facility Fee ...............................................................................................8
1.97    Fee Credit .................................................................................................8
1.98    Field ..........................................................................................................8
1.99    Field Maintenance ....................................................................................8
1.100   Final Completion Date ..............................................................................8
1.101   Financial Closing ......................................................................................8
1.102   Financial Obligations ................................................................................9
1.103   Five Day Rule ...........................................................................................9
1.104   Football PSLs ...........................................................................................9
1.105   Football Season ........................................................................................9
1.106   Force Majeure ..........................................................................................9
1.107   Franchise ..................................................................................................9
1.108   Franchise Public Sector Event .................................................................9
1.109   Franchise Right of First Refusal ...............................................................9
1.110   Future Football PSLs ................................................................................9
1.111   Future Marketing Rights ...........................................................................9
1.112   Future Marketing Rights Agreements .......................................................9
1.113   Future Marketing Rights Program .............................................................9
1.114   Game Day Expenses ..............................................................................10
1.115   Game Days ..............................................................................................10
1.116   Game Day Site ........................................................................................10
1.117   General Superintendent ..........................................................................10
1.118   GMAX Contract ........................................................................................10
1.119   Governmental Authority ...........................................................................10
1.120   Hazardous Materials ................................................................................10
1.121   Health and Safety Capital Improvements ................................................10
1.122   Improper Relocation ................................................................................10
1.123   Indemnified Party .....................................................................................11
1.124   Initial Football PSLs .................................................................................11
1.125   Initial Football PSL Licensee ...................................................................11
1.126   Invitee ......................................................................................................11
1.127   ISFA Act ...................................................................................................11
1.128   Law ...........................................................................................................11
1.129   Leasehold and Use Taxes .......................................................................11
1.130   LCDs .........................................................................................................11
1.131   Lien ...........................................................................................................11
1.132   Lienholder .................................................................................................11
1.133   Litigation ...................................................................................................11
1.134   Local Media ..............................................................................................11
1.135   Losses ......................................................................................................11
1.136   Major College Football Game ..................................................................12
1.137   Major Corporate Sponsor ........................................................................12
1.138   Major Event ..............................................................................................12
1.139   Marketing Rights ......................................................................................12
1.140   Material Part .............................................................................................12
1.141   Mayor's High School Championship Game ..............................................12
1.142   Media Rights ............................................................................................12

1.143   Memorandum of Agreement ...................................................................12
1.144   Mid-South Parking Structure ..............................................................12
1.145   Miscellaneous Taxes ...........................................................................12
1.146   MOU .....................................................................................................12
1.147   Museum Campus .................................................................................12
1.148   Naming Rights .....................................................................................12
1.149   Naming Rights Agreements .................................................................13
1.150   Naming Rights Program ......................................................................13
1.151   Naming Rights Sponsor .......................................................................13
1.152   Naming Rights Sponsor's Business .....................................................13
1.153   Naming Rights Sponsor's Prohibition Rights ......................................13
1.154   National Public Sector Event ...............................................................13
1.155   National Public Sector Event Sponsor .................................................13
1.156   Natural Turf ........................................................................................13
1.157   NFL Major Event .................................................................................13
1.158   NFL ......................................................................................................13
1.159   NFL Days .............................................................................................13
1.160   NFL Experience ...................................................................................13
1.161   NFL Schedule ......................................................................................13
1.162   NFL Season .........................................................................................13
1.163   NFL Strike ...........................................................................................13
1.164   North Parking Structure ......................................................................13
1.165   Non-Franchise Public Sector Event .....................................................13
1.166   Non-Franchise Right of First Refusal ..................................................14
1.167   Operation Assistance Agreement ........................................................14
1.168   Operating Expenses ............................................................................14
1.169   Option Limitations ...............................................................................14
1.170   Option Notice ......................................................................................14
1.171   Ordinary Capital Improvements ..........................................................14
1.172   Original Term ......................................................................................14
1.173   Other Capital Improvements ...............................................................14
1.174   Panel ...................................................................................................14
1.175   Parking ................................................................................................14
1.176   Parking Allotment ...............................................................................14
1.177   Parking Allotment Fee .........................................................................14
1.178   Parking Allotment Taxes .....................................................................14
1.179   Parkland ..............................................................................................14
1.180   PBC .....................................................................................................14
1.181   Product Rights .....................................................................................14
1.182   Product Rights Program ......................................................................14
1.183   Product Rights Agreement ...................................................................14
1.184   Project .................................................................................................14
1.185   Project Costs .......................................................................................15
1.186   Project Funds ......................................................................................15
1.187   Project Plans .......................................................................................15
1.188   Project Site ..........................................................................................15
1.189   Property Tax ........................................................................................15
1.190   PSL Licensee .......................................................................................15
1.191   PSL ......................................................................................................15

1.192    Public Sector Event ..................................................................................15
1.193    Public Sector Event Sponsor ..................................................................15
1.194    Public Sector Event Sponsor PSLs.........................................................15
1.195    Right of First Refusal ..............................................................................15
1.196    Routine Maintenance ..............................................................................15
1.197    Sales Tax..................................................................................................15
1.198    Schedule Request Confirmation .............................................................15
1.199    Schedule Request Denial ........................................................................15
1.200    Scheduling Procedures ...........................................................................15
1.201    Scheduling Request.................................................................................15
1.202    Signage ...................................................................................................15
1.203    Signage Plan ...........................................................................................16
1.204    Signage Rights ........................................................................................16
1.205    Signage Rights Agreements ....................................................................16
1.206    Signage Rights Program ..........................................................................16
1.207    Soldier Field ............................................................................................16
1.208    South Parking Lot ....................................................................................16
1.209    Special Games .........................................................................................16
1.210    Specifications...........................................................................................16
1.211    Sponsor-Related Events ..........................................................................16
1.212    Sports Team Tax ......................................................................................16
1.213    Stadium Seating .......................................................................................16
1.214    Standard Arbitration ................................................................................16
1.215    Substantial Completion of the Stadium and North Garage ....................16
1.216    Suites.......................................................................................................16
1.217    Suite License ...........................................................................................16
1.218    Suite Licensee .........................................................................................16
1.219    Super Bowl ..............................................................................................16
1.220    Tailgate Parties .......................................................................................17
1.221    Tax Agreement ........................................................................................17
1.222    Team Areas ..............................................................................................17
1.223    Temporary Taking.....................................................................................17
1.224    10 Year Upgrades.....................................................................................17
1.225    Term .........................................................................................................17
1.226    34 Dates ...................................................................................................17
1.227    Total Permit Fee ......................................................................................17
1.228    2003 Per Game Facility Fee ....................................................................17
1.229    2003 Per Game Parking Allotment Fee ..................................................17
1.230    Transaction Documents...........................................................................17
1.231    Video Boards ...........................................................................................17
1.232    Weekday Practice.....................................................................................17
1.233    White Sox .................................................................................................17
ARTICLE 2. REPRESENTATIONS AND WARRANTIES..........................................17
2.1    Representations, Warranties and Covenants Relating to the Club.................17
2.2    Representations, Warranties and Covenants Relating to the CPD. ...............20
2.3    Representations, Warranties and Covenants Relating to the Subsidiary. .......23
2.4    Survivability...................................................................................................26
2.5    Litigation........................................................................................................26
ARTICLE 3. TERM AND TERMINATION ................................................................26

3.1    Term. ................................................................................................26
3.2    Extension Options. ...........................................................................26
3.3    Limitation on Options. ......................................................................26
3.4    Rejection of Extension Option. .........................................................27
3.5    Termination by the Club. ..................................................................27
3.6    Termination by the CPD. ..................................................................27
3.7    Mutual Termination. ..........................................................................27
3.8    Effect of Termination. .......................................................................27
3.9    Marketing Rights. ..............................................................................27
ARTICLE 4. MEMORANDUM OF AGREEMENT ...........................................28
4.1    General. ............................................................................................28
4.2    Termination Upon Adaptive Reuse. ..................................................28
4.3    Disruptions. ......................................................................................28
ARTICLE 5. PROFESSIONAL SPORTS EVENTS........................................28
5.1    Bears Games. ...................................................................................28
5.2    Other Professional Football Games. .................................................28
5.3    Other Professional Sports Teams. ....................................................29
5.4    General Conditions. ..........................................................................29
ARTICLE 6. CLUB USE RIGHTS ...................................................................29
6.1    Bowl. ..................................................................................................29
6.2    Club-Lounge Area. ............................................................................29
6.3    Facility and Game Day Site. .............................................................30
6.4    Parking. .............................................................................................30
6.5    Suites. ...............................................................................................31
6.6    Corporate Parties. .............................................................................31
6.7    Tailgate Parties. ................................................................................31
6.8    Team Areas. ......................................................................................31
6.9    Video Boards and Sound System. .....................................................31
6.10   Invitees. .............................................................................................32
6.11   Commencement. ...............................................................................32
ARTICLE 7. COMPLIANCE WITH LAWS, AND RESTRICTIONS ON USE...................32
7.1    General Compliance with the Laws. ..................................................32
7.2    No Gambling. .....................................................................................32
7.3    Alcoholic Beverages. .........................................................................32
7.4    No Narcotics. .....................................................................................32
7.5    Immoral Acts. ....................................................................................32
7.6    No Endangerment of Public Safety. ..................................................32
7.7    Compliance with Food and Safety Laws. ...........................................32
7.8    Compliance with Environmental Laws. ..............................................32
7.9    Compliance with the Illinois Prevailing Wage Act and the Davis-Bacon Act....33
7.10   General Compliance with the Laws. ..................................................33
ARTICLE 8. CPD USE RIGHTS .....................................................................33
8.1    Generally. ..........................................................................................33
8.2    Limitations on the CPD Use of the Facility. .......................................33
8.3    Reservation of Rights. .......................................................................33
ARTICLE 9. FIVE DAY RULE .........................................................................35
9.1    General Rule. .....................................................................................35
9.2    Purpose. ............................................................................................35
9.3    Exceptions. ........................................................................................35

9.4    Advances in Technology. ...................................................................35
9.5    Natural Turf. ....................................................................................35
9.6    Major National or International Events. ...........................................36
ARTICLE 10. SCHEDULING AND CONFIRMATION OF THE USE OF THE FACILITY
.................................................................................................................36
10.1    Schedule Requests ........................................................................36
10.2    Response. ......................................................................................36
10.3    Effect of a Schedule Request. .......................................................37
10.4    Confirmation Conditions. ...............................................................37
10.5    Denial. ............................................................................................38
10.6    Failure to Respond. ........................................................................38
10.7    Bears Games. ................................................................................38
10.8    NFL Days. .......................................................................................38
10.9    Effect of Confirmation. ...................................................................38
10.10    Procedure and Form ....................................................................38
10.11    Effect. ...........................................................................................39
10.12    Rescheduling; Cancellation. ........................................................39
10.13    Cooperation. .................................................................................40
10.14    No Expansion of Club Use Rights................................................40
ARTICLE 11. PERMANENT SEAT LICENSES .....................................................40
11.1    Initial Football PSLs........................................................................40
11.2    Future Football PSLs.......................................................................40
11.3    Public Sector Event Sponsor PSLs. ...............................................41
ARTICLE 12. LICENSING OF SUITES AND CLUB SEATS...................................41
12.1    Club Rights.....................................................................................41
12.2    CPD Rights. ....................................................................................42
12.3    Non-Franchise Public Sector Events – Right of First Refusal. .......42
12.4    Franchise Public Sector Events – Right of First Refusal. ...............43
ARTICLE 13. ALLOCATION OF REVENUES .......................................................44
13.1    Club Revenue.................................................................................44
13.2    CPD Revenue. ...............................................................................44
13.3    PSL Revenue. .................................................................................45
ARTICLE 14. CLUB PAYMENTS TO CPD ............................................................45
14.1    General. ..........................................................................................45
14.2    Special Payment Provisions for 2003. ...........................................46
14.3    Changes in Number of Bears Games in a Football Season. ..........47
ARTICLE 15. TAXES.............................................................................................47
15.1    CPD Responsibility.........................................................................47
15.2    Club Responsibility.........................................................................47
15.3    CPD Cooperation. ..........................................................................48
15.4    Club Cooperation. ..........................................................................48
ARTICLE 16. MARKETING RIGHTS.....................................................................48
16.1    Signage Rights. ..............................................................................48
16.2    Naming Rights. ...............................................................................50
16.3    Entitlement Rights. ..........................................................................51
16.4    Future Marketing Rights. ................................................................52
16.5    Product Rights. ...............................................................................53
16.6    General Restrictions. ......................................................................55
16.7    General Reservation of CPD Rights – Inside the Facility. ..............55

16.8   Major Events. ................................................................................56
16.9   Signage Costs. ..............................................................................56
ARTICLE 17. PROMOTION AND BROADCASTING RIGHTS ...........................56
17.1   Promotion. ....................................................................................56
17.2   Broadcast and Recording Rights. ....................................................56
17.3   Copyrights. ...................................................................................56
17.4   Filming and Taping. .......................................................................57
17.5   Broadcaster Access. ......................................................................57
17.6   Installations ..................................................................................57
17.7   Accreditation of Media. ..................................................................57
17.8   Copyright and Trademark Law. .......................................................57
17.9   Name and Likeness. .......................................................................57
17.10    Drawings, Specifications and Construction Documents. ...................57
17.11    Consent by Club. .........................................................................58
17.12    Trademark. .................................................................................58
ARTICLE 18. BOX OFFICE, TICKETS, AND ATTENDANCE ............................58
18.1   General. .......................................................................................58
18.2   Reserved Seating. ..........................................................................58
18.3   Disabled Patrons. ..........................................................................58
18.4   Ticket Prices and Manner of Sale. ...................................................58
18.5   Records. .......................................................................................58
18.6   Box Office and Printing Charges. .....................................................59
18.7   Maximum Number. ........................................................................59
18.8   Attendance. ..................................................................................59
ARTICLE 19. ROUTINE MAINTENANCE ......................................................59
19.1   Scope of Routine Maintenance. ......................................................59
19.2   Allocation of Routine Maintenance Responsibilities. .........................59
19.3   Cooperation. .................................................................................60
19.4   Failure To Satisfy Routine Maintenance Responsibilities. ..................60
19.5   Video Boards. ...............................................................................60
19.6   Consultation. ................................................................................60
ARTICLE 20. CAPITAL IMPROVEMENTS ....................................................60
20.1   Scope of Capital Improvements. .....................................................60
20.2   Allocation of Capital Improvements Responsibilities. ........................61
20.3   Capital Improvement Fund. ............................................................62
20.4   Limitation on CPD Financial Obligations. .........................................62
20.5   Capital Improvement Program and Prioritizing Capital Improvements. ..........63
20.6   Limitations on Capital Improvements. ..............................................64
20.7   Untenantable During Capital Improvements. ....................................64
20.8   Future Team Areas. .......................................................................65
20.9   Club Capital Improvements. ...........................................................65
20.10    Safety Inspections. ......................................................................66
20.11    Failure To Satisfy Capital Improvement Responsibilities. ...............66
20.12    Approval of Capital Improvements. ...............................................66
ARTICLE 21. OPERATING EXPENSES .........................................................67
21.1   Scope of Operating Expenses. ........................................................67
21.2   Allocation of Operational Expense Responsibility. ............................67
ARTICLE 22. GAME DAY COSTS, EXPENSES AND RESPONSIBILITY ...................68
22.1   Scope of Game Day Expenses. .......................................................68

22.2    Allocation of Game Day Responsibilities. ........................................68
22.3    Game Day Personnel. ....................................................................68
22.4    Video Board Operators. ..................................................................69
ARTICLE 23. FIELD MAINTENANCE, REPAIR AND REPLACEMENT ......................69
23.1    Scope of Field Maintenance. ...........................................................69
23.2    CPD Responsibilities. .....................................................................69
23.3    Club Rights. ..................................................................................69
23.4    Natural Turf Suppliers. ...................................................................69
23.5    Replacement. ................................................................................69
23.6    Cooperation. .................................................................................70
23.7    Expedited Arbitration. ....................................................................70
23.8    Artificial Turf. ...............................................................................70
23.9    Payment Obligations. .....................................................................70
ARTICLE 24. INTENTIONALLY OMITTED .............................................................70
ARTICLE 25. SECURITY AND CROWD CONTROL ..................................................70
25.1    Game Day. ...................................................................................70
25.2    Club-Related-Events and Sponsor-Related Events. ............................70
25.3    Bears Suite Licenses. .....................................................................70
ARTICLE 26. CONCESSIONAIRES .......................................................................70
26.1    General. .......................................................................................70
26.2    Terms. .........................................................................................71
26.3    Supervision. .................................................................................71
26.4    MBE/WBE Program. .......................................................................71
26.5    Suites. .........................................................................................71
ARTICLE 27. INSURANCE .................................................................................71
27.1    CPD Insurance Requirements. .........................................................71
27.2    The Club Insurance Requirements ....................................................72
27.3    General Insurance Requirements. .....................................................73
27.4    Waiver of Subrogation. ...................................................................74
ARTICLE 28. LIENS .........................................................................................74
28.1    Club. ...........................................................................................74
28.2    CPD. ............................................................................................74
28.3    Permitted Liens. ............................................................................75
ARTICLE 29. BEARS DEFAULT ..........................................................................75
29.1    Definition of "Bears Terminating Default". ........................................75
29.2    Definition of Bears Non-Terminating Default. ....................................75
29.3    Remedies of CPD. ..........................................................................76
29.4    Surrender of Possession by the Club. ...............................................77
29.5    Rights to Property After Default or Otherwise. ...................................78
29.6    Tolling of Cure Period. ....................................................................78
29.7    Post Performance Challenge. ...........................................................78
29.8    Notice of Default. ..........................................................................79
ARTICLE 30. CPD DEFAULT ..............................................................................79
30.1    Definition of CPD Terminating Default. .............................................79
30.2    Limitations. ..................................................................................79
30.3    Definition CPD Non-Terminating Default. ..........................................79
30.4    Remedies. ....................................................................................79
30.5    Rights to Property After Default. ......................................................81
30.6    Tolling of Cure Period. ....................................................................81

30.7   Post Performance Challenge...........................................................81
30.8   Notice of Default...........................................................................82
30.9   Limitation on Remedies..................................................................82
ARTICLE 31. INDEMNIFICATION.............................................................82
31.1   Club and Subsidiary Indemnification – General. ...........................82
31.2   Club and Subsidiary Indemnification – Personal Injury, Death or Property
Damage. .................................................................................................82
31.3   CPD Indemnification – General. ...................................................82
31.4   CPD Indemnification – Personal Injury, Death or Property Damage. .............83
31.5   Procedure Regarding Indemnification. ..........................................83
31.6   Survivability. ................................................................................84
ARTICLE 32. EXPEDITED ARBITRATION ...............................................84
32.1   General. ......................................................................................84
32.2   Selection of Expeditious Arbitrator. .............................................85
32.3   Expedited Arbitration Process. .....................................................85
32.4   Fees and Costs. ...........................................................................85
32.5   Discovery Rights. .........................................................................85
ARTICLE 33. STANDARD ARBITRATION.................................................85
33.1   General. ......................................................................................85
33.2   Composition of Panel. ..................................................................86
33.3   Fees and Costs. ...........................................................................86
33.4   Discovery Rights. .........................................................................86
ARTICLE 34. EFFECT OF FORCE MAJEURE, ACTS OF GOD,  STRIKES, LOCK-
OUTS AND LABOR TROUBLE ...............................................................86
34.1   CPD.............................................................................................86
34.2   Club.............................................................................................86
34.3   General. ......................................................................................87
ARTICLE 35. JOINT AND SEVERAL LIABILITY OF CLUB AND CLUB'S SUBSIDIARY
.............................................................................................................87
35.1   Club.............................................................................................87
35.2   Subsidiary. ..................................................................................87
ARTICLE 36. CONDEMNATION AND EMINENT DOMAIN ..........................87
36.1   Permanent Condemnation. ..........................................................87
36.2   Temporary Taking. .......................................................................87
36.3   Representation. ...........................................................................88
36.4   Allocation of Award......................................................................88
36.5   Performance of Work. ..................................................................88
ARTICLE 37. COVENANT OF QUIET ENJOYMENT....................................89
ARTICLE 38. MISCELLANEOUS .............................................................89
38.1   Amendments. ..............................................................................89
38.2   Applicable Law. ...........................................................................89
38.3   Appointment as Agent. ................................................................89
38.4   Assignment..................................................................................89
38.5   Attorneys Fees. ...........................................................................90
38.6   Compliance with Laws..................................................................90
38.7   Construction. ...............................................................................91
38.8   Confidentiality. ............................................................................91
38.9   Counterparts................................................................................91
38.10    Cumulative Rights and Remedies................................................91

38.11   Late Payments..............................................................................91
38.12   Drafting...................................................................................91
38.13   Entire Agreement.........................................................................91
38.14   Expenses..................................................................................91
38.15   Facsimile Signatures....................................................................92
38.16   Further Assurances.......................................................................92
38.17   Good Faith Dispute Resolution........................................................92
38.18   Headings...................................................................................92
38.19   Jurisdiction, Venue and Forum.........................................................92
38.20   Jury Trial..................................................................................92
38.21   Knowledge.................................................................................92
38.22   Mutual Cooperation.......................................................................92
38.23   No Agency or Partnership Relationship................................................93
38.24   Notices.....................................................................................93
38.25   Registered Agent.........................................................................94
38.26   Service of Process.......................................................................94
38.27   Severability................................................................................94
38.28   Successor Bound.........................................................................94
38.29   Third Party Beneficiaries................................................................94
38.30   Time of Essence..........................................................................94
38.31   Waivers....................................................................................94
38.32   Adaptive Reuse...........................................................................94
38.33   Recordation...............................................................................95
38.34   NFL Approval..............................................................................95

## Exhibits

| Exhibit A | Depiction of the Game Day Site |
|-----------|-------------------------------|
| Exhibit B | A Non-exclusive list of Routine Maintenance |
| Exhibit C | A Non-exclusive list of Club Game Day Expenses |
| Exhibit D | Examples for Product Categories |

06298/00024/189933/20

Exhibits

## PERMIT AND OPERATING AGREEMENT

THIS PERMIT AND OPERATING AGREEMENT ("Agreement") dated as of August 1, 2001, by and among the CHICAGO PARK DISTRICT, a municipal corporation organized and existing pursuant to 70 Illinois Complied Statutes 1505/1 et seq. (the "CPD"), Chicago Bears Football Club, Inc., a corporation organized and existing under the laws of Delaware (the "Club"), and the Chicago Bears Stadium LLC, a limited liability company organized and existing under the laws of Delaware and a wholly owned subsidiary of the Club (the "Subsidiary").

## RECITALS

WHEREAS, the Club is currently entitled to use Soldier Field pursuant to the terms and conditions of the Memorandum of Agreement as defined below;

WHEREAS, the parties anticipate that a substantial adaptive reuse of Soldier Field will commence in the year 2001 and be completed in the year 2003;

WHEREAS, the parties intend that this Agreement govern their respective rights and obligations with respect to the Club's use of the renovated Soldier Field;

WHEREAS, the CPD desires to grant permission to the Club to use the renovated Soldier Field upon the terms and conditions contained here;

WHEREAS, the parties intend that this Agreement specifically govern certain marketing and advertising rights and obligations of the Club and the Subsidiary in connection with the renovated Soldier Field;

WHEREAS, the CPD, the Club and the Illinois Sports Facilities Authority are parties to a certain development assistance agreement dated on or about the date hereof pursuant to which the Illinois Sports Facilities Authority will provide financial assistance to the CPD with respect to the adaptive reuse of Soldier Field; and

WHEREAS, the CPD and the Illinois Sports Facilities Authority are parties to a certain operation assistance agreement dated on or about the date hereof pursuant to which the Illinois Sports Facilities Authority will provide financial assistance to the CPD with respect to repair, maintenance and capital improvements to the renovated Soldier Field and the surrounding area; and

WHEREAS, the Illinois Sports Facilities Authority and Bears Stadium LLC are parties to a certain development agreement pursuant to which Bears Stadium LLC has undertaken to design and construct the adaptive reuse of Soldier Field and the improvements to the surrounding area.

06298/00024/189933/20

1

NOW THEREFORE, in consideration of the mutual covenants, agreements and warranties contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

## ARTICLE 1.
## DEFINITIONS

**1.1**    **Acquiror** shall mean any party which merges with or into the Club or acquires all of substantially all of the Club's stock or assets.

**1.2**    **Action** shall have the meaning set forth in Article 31.

**1.3**    **Adaptive Reuse** shall mean the adaptive reuse of Soldier Field as contemplated by the Transaction Documents.

**1.4**    **Affiliate** shall mean an affiliate, subsidiary, parent, director, officer, commissioner, superintendent, employee, stockholder, member or owner of a party hereto.

**1.5**    **Amusement Tax** shall mean the City's amusement tax as in effect from time to time.

**1.6**    **Arbitration** shall mean Expedited Arbitration or Standard Arbitration.

**1.7**    **Artificial Turf** shall mean artificial turf or other non-natural grass surfaces.

**1.8**    **Architect** shall mean LW&Z, a joint venture between Woods + Zapata, Inc. and Lohan Associates.

**1.9**    **Authority** shall mean the Illinois Sports Facilities Authority, a political subdivision, body politic and municipal corporation created pursuant to the ISFA Act.

**1.10**    **Authority Capital Improvements Subsidy** shall mean the subsidy to be provided to the CPD by the Authority to assist in the funding of Capital Improvements pursuant to the Operation Assistance Agreement.  The parties anticipate that the Authority Capital Improvements Subsidy will be at a rate of $1,500,000 per year commencing in year 2003, increasing to $2,500,000 in year 2011 and increasing thereafter at an annual rate of three percent (3%) per year, as contemplated in the Operation Assistance Agreement.

**1.11**    **Basic Repair and Maintenance** shall mean normal and customary cleaning and janitorial services and basic repairs, such as but not limited to cleaning of floors and floor coverings, window cleaning, trash removal, cleaning of bathrooms and shower rooms, cleaning or removal of spills, replacing light bulbs. fuses and circuit breakers, touch-up painting, repair or replacement  of components of broken or malfunctioning HVAC, electrical, mechanical and plumbing equipment, replacing broken glass, changing of air filters and similar work as required to maintain the upkeep of the premises and the good and working condition of its components, but shall not include any repair, maintenance or cleaning of the Club's specialized or sophisticated equipment such as training equipment, testing equipment or the like.

**1.12**    **Bears** shall mean individually or collectively, as the context may require, the Club and the Subsidiary.

1.13  **Bears Administrative Offices** shall mean that area or location in the Facility designated as the Bears' administrative offices on the Project Plans or by mutual agreement of the Club and the CPD.

1.14  **Bears Club Seat Licensee** shall mean a holder of a Club Seat License whose license includes certain rights on Game Days.

1.15  **Bears Default** shall mean a Bears Terminating Default and/or a Bears Non-Terminating Default.

1.16  **Bears Games** shall mean the pre-season, regular season and post-season NFL football games for which the Club is deemed the "home team".

1.17  **Bears Hall of Fame** shall mean an area or location in the Facility designated as the Bears' Hall of Fame by mutual agreement of the Club and the CPD.

1.18  **Bears Locker Room** shall mean that area or location designated in the Facility as the Bears' locker room on the Project Plans or by mutual agreement of the Club and the CPD.

1.19  **Bears Non-Terminating Default** shall have the meaning set forth in Article 29.

1.20  **Bears PSL Agreements** shall have the meaning set forth in Article 11.

1.21  **Bears PSL Program** shall have the meanings set forth in Article 11.

1.22  **Bears Related Merchandise** shall mean any novelties, programs, souvenirs and other merchandise which directly relates to the Club, the NFL or any NFL team.

1.23  **Bears Retail Store** shall mean an area or location in the Facility designated as the Bears' retail store by mutual agreement of the Club and the CPD.

1.24  **Bears Sports Bar/Restaurant** shall mean an area or location designated in the Facility designated as the Bears' sports bar and/or restaurant by the Club and approved by the CPD as contemplated in Section 20.8.

1.25  **Bears Storage Areas** shall mean that area or location designated in the Facility as the Bears' storage area on the Project Plans or by mutual agreement of the Club and the CPD.

1.26  **Bears Suite Licensee** shall mean a Suite Licensee whose license includes the right to use a Suite on Game Days and who is entitled to other rights as provided in this Agreement.

1.27  **Bears Terminating Default** shall have the meaning set forth in Article 29.

1.28  **Bears Termination Remedy** shall have the meaning set forth in Article 30.

1.29  **Bears Ticket Holders** shall mean those individuals and entities which own tickets to the Bears Games.

1.30  **Bowl** shall mean the Field and the Stadium Seating which are part of the Facility.

06298/00024/189933/20

1.31    **Beer Garden** shall mean that area or location designated as the beer garden, if any, on the Project Plans or by mutual agreement of the Club and the CPD.

1.32    **Capital Improvements** shall have the meaning set forth in Article 20.

1.33    **Capital Improvement Fund** shall have the meaning set forth in Article 20.

1.34    **Capital Improvement Fund Sources** shall have the meaning set forth in Article 20.

1.35    **Capital Improvement Program** shall mean a Capital Improvement Program developed by the Club and the CPD to address and prioritize the short term and long term Capital Improvement needs of the Project.

1.36    **Casualty** shall mean fire, explosion, windstorm or any other casualty which is covered by an "all-risk" policy of property and casualty insurance.

1.37    **Certificate of Occupancy** shall mean a certificate of occupancy issued by the City Building Department or a similar certificate issued by any other applicable Governmental Authority.

1.38    **City** shall mean the City of Chicago.

1.39    **Club Capital Improvements** shall mean Capital Improvements made by and paid for by the Club.

1.40    **Club Excluded Occurrences** shall have the meaning set forth in Article 31.

1.41    **Club Lounge Area** shall mean a private lounge area to the rear and/or below the Club Seat Area as set forth on the Project Plans or by mutual agreement of the Club and the CPD.

1.42    **Club Misuse** shall mean any negligent or willful acts of the Club, or the Club's Invitees which result in damage, or necessitate repairs, to the Facility.

1.43    **Club-Related Event** shall mean an event to be held at the Facility or in a part thereof, e.g., the Club Lounge Area, sponsored by the Club that is related to the operation of the Club or the marketing or promotion of the Club or the NFL, including but not limited to, Club rallies, tag days, exhibition games, autograph sessions, fan appreciation sessions, season ticket subscriber sessions, and marketing, sales, public relations and promotional events by the Club. Nothing other than the Club and the NFL shall be promoted or presented at Club-Related Events. A Sponsor-Related Event shall not be deemed a Club-Related Event, provided however participation by a Sponsor in the sponsorship of a Club-Related Event shall not prevent it being deemed to be a "Club-Related Event" (e.g., a football autograph day sponsored by the Club and one or more commercial companies who advertise, finance, and assist in promotion of the event). An NFL Day shall be deemed a Club-Related Event; provided however, an NFL Day shall not count towards any of the Club's 34 Dates.

1.44    **Club Seats** shall mean seating in the Facility available on a premium basis for Bears Games as set forth on the Project Plans or by mutual agreement of the Club and the CPD.

1.45    **Club Seat Area** shall mean the area of the Facility in which Club Seats are situated.

1.46    **Club Seat License** shall mean the additional rights and licenses granted to certain PSL Licensees, who hold PSLs for Club Seats, to use and occupy the Club Lounge Area.

1.47    **Club Signage** shall mean Signage which primarily promotes, markets or advertises the Club, the NFL or their Affiliates.

1.48    **Club Termination Notice** shall mean the Club's written notice to the CPD that a CPD Terminating Default has occurred and that the Club intends to terminate this Agreement as a result thereof.

1.49    **Club Use Period** shall mean that period of time when the Club, the Subsidiary, or the Club's Invitees, are exercising or utilizing directly or indirectly, the Club Use Rights.

1.50    **Club Use Rights** shall have the meaning set forth in Article 6.

1.51    **Colonnades** shall mean Soldier Field's historical colonnades and the improvements and supporting structure related thereto.

1.52    **Colonnades Capital Improvements** shall have the meaning set forth in Article 20.

1.53    **Communication** shall have the meaning set forth in Article 38.

1.54    **Concessionaires** shall mean those parties who provide Concessions and related services at the Facility.

1.55    **Concession Areas** shall mean the areas within the Facility where Concessions are stored, prepared or sold and the offices and other space dedicated to Concessionaires.  Concession Areas shall not include the Bears Hall of Fame or the Bears Retail Store, if any, or any other retail area that the CPD and the Club shall mutually agree to include in the Facility from time to time.

1.56    **Concessions** shall mean catered, prepared and prepackaged food, alcoholic and non alcoholic beverages, and items sold to patrons of sporting events and other events held at the Facility.

1.57    **Condemnation** shall mean the exercise of the power of eminent domain, whether by formal condemnation proceedings or by purchase under threat of exercise of the power of eminent domain proceedings..

1.58    **Condemnation Award** shall have the meaning set forth in Article 36.

1.59    **Confirmation Conditions** shall have the meaning set forth in Article 10.

1.60    **Confirmed Schedule Request** shall mean a Schedule Request which is confirmed, deemed confirmed or required to be confirmed by the CPD pursuant to the provisions of Article 10.

1.61    **Constitutional Obligations** shall mean the obligations, duties, limitations and restrictions imposed on Governmental Authorities under the Constitution of the United States or the Constitution of the State of Illinois.

1.62 **Construction Documents** shall have the meaning set forth in the Development Agreement.

1.63 **Construction Manager** shall have the meaning set forth in the Development Agreement.

1.64 **Corporate Parties** shall mean private and ticketed parties, promotional events, pep rallies and other similar and related activities sponsored by the Club or by sponsors of the Club as referenced in Section 6.6.

1.65 **CPD Default** shall mean a CPD Terminating Default and/or a CPD Non-Terminating Default.

1.66 **CPD Excluded Occurrences** shall have the meaning set forth in Article 31.

1.67 **CPD Non-Terminating Default** shall have the meaning set forth in Article 30.

1.68 **CPD Terminating Default** shall have the meaning set forth in Article 30.

1.69 **CPD Termination Remedy** shall have the meaning set forth in Article 29.

1.70 **CPD's Specifically Reserved Use Rights** shall mean the use rights specifically reserved by the CPD pursuant to Sections 8.3.2 [Mayor's Championship], 8.3.3 [Professional Soccer Playoff Games], 8.3.4 [Major College Football Game] and 8.3.6 [Bowl].

1.71 **CPI** shall mean the Consumer Price Index – All Urban Consumers – (base index year 1982-1984=100) Chicago, Gary, Kenosha, IL-IN-WI as published by the United States Department of Labor, Bureau of Labor Statistics. If the manner in which the CPI is determined by the Bureau of Labor Statistics shall be substantially revised, including, without limitation, a change in the base index year, an adjustment shall be made by the CPD in such revised index which would produce results equivalent, as nearly as possible, to those which would have been obtained if such CPI had not been so revised. If the CPI becomes unavailable to the public because publication is discontinued, or otherwise, or if equivalent data is not readily available to enable the CPD to make the adjustment referred to in the preceding sentence, then the CPD will reasonably substitute therefor a comparable index based upon changes in the cost of living or purchasing power of the consumer dollar published by any other governmental agency or, if no such index is available, then a comparable index published by a university, a major bank or other financial institution or a comparable and recognized financial publication.

1.72 **Designated Broadcasters** shall mean those broadcasters designated by the Club and/or the NFL to broadcast and transmit Bears Games.

1.73 **Developer** shall mean the Chicago Bears Stadium LLC.

1.74 **Development Assistance Agreement** shall mean that certain Development Assistance Agreement dated as of August 1, 2001 by and between the Authority, the CPD and the Club.

**1.75** **Development Agreement** shall mean that certain Development Agreement dated as of August 1, 2001 entered into by and between the Authority and the Developer with respect to the Project.

**1.76** **Direct Competitor** shall mean any person or entity whose primary business is in direct competition with the Naming Rights Sponsor's Business, as determined in accordance with Section 16.2.9.

**1.77** **Disabled Patrons** shall mean patrons or potential patrons of the Facility who require special seating and access because of a physical handicap or disability.

**1.78** **Drawings** shall have the meaning set forth in the Development Agreement.

**1.79** **Employment Taxes** shall mean all taxes related to the employment or hiring of employees, independent contractors and agents as in effect from time to time.

**1.80** **Engineering Reports** shall mean any engineering reports or other reports with respect to the structure or condition of the Facility (including the Colonnades), the Parklands, North Parking Structure, Mid-South Parking Structure and the South Parking Lot which the CPD may have prepared or conducted from time to time.

**1.81** **Entitlement Rights** shall mean the right to name different portions of the Facility, such as the Bowl, particular concourses, stadium sections and the like; provided however, in no event shall such right be deemed to include the right to name the Colonnades.

**1.82** **Environmental Area** shall mean the Facility, the Project Site and the Museum Campus.

**1.83** **Environmental Laws** shall mean all federal, state, district, local and foreign laws, rules, regulations, ordinances, permits, orders, writs, injunctions, judgments and consent decrees relating to health, safety, hazardous substances, pollution and environmental matters, as now or at any time hereafter in effect, applicable to the Club's business, the Facility, the Surrounding Area or the Museum Campus, including laws relating to emissions, discharges, releases or threatened releases of pollutants, contamination, chemicals, or hazardous, toxic or dangerous substances, materials or wastes in the environment (including, without limitation, ambient air, surface water, land surface or subsurface strata) or otherwise relating to the generation, manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling of Hazardous Materials. Without limiting the generality of the foregoing, "Environmental Laws" shall encompass each of the following statutes and the regulations promulgated thereunder, in any similar applicable state, local or foreign law, rule or regulation, each as amended (i) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, (ii) the Solid Waste Disposable Act, (iii) the Hazardous Materials Transportation Act, (iv) the Toxic Substances Control Act, (v) the Clean Water Act, (vi) the Clean Air Act, (vii) the Safe Drinking Water Act, (viii) the National Environmental Policy Act of 1986, (ix) the Superfund Amendments and Reauthorization Act of 1986, (x) Title III of the Superfund Amendments and Reauthorization Act, (xi) the Federal Insecticide, Fungicide and Rodenticide Act, and

(xii) Provisions of the Occupational Safety and Health Act of 1970 relating to the handling of and exposure to Hazardous Materials.

**1.84    Escrow Account** shall mean the escrow accounts into which all Project Funds were deposited as contemplated by the Development Assistance Agreement.

**1.85    Ethnic Marketers** shall mean marketers of products and services which target specific racial and ethnic groups.

**1.86    Event** shall mean a Club-Related Event, a Sponsor-Related Event, or a Public Sector Event.

**1.87    Excluded Occurrences** shall mean Club Excluded Occurrences and CPD Excluded Occurrences.

**1.88    Exclusive Signage Product Categories** shall mean those six (6) categories of products or services to be mutually agreed upon by the Club and the CPD and designated as an exclusive signage product category with respect to Signage inside the Facility.

**1.89    Expeditious Arbitrator** shall mean the arbitrator as selected pursuant to Article 32.

**1.90    Expedited Arbitration** shall have the meaning set forth in Article 32.

**1.91    Expedited Arbitration Request** shall have the meaning set forth in Article 32.

**1.92    Expedited Ruling** shall have the meaning set forth in Article 32.

**1.93    Extension Option** shall have the meaning set forth in Article 3.

**1.94    Extension Terms** shall have the meaning set forth in Article 3.

**1.95    Facility** shall mean Soldier Field (including the Colonnades) as renovated and improved in accordance with the Project Plans or by mutual agreement of the Club and the CPD; provided, however, the Facility shall not include the Parklands, the North Parking Structure, the Mid-South Parking Structure or the South Parking Lot.

**1.96    Facility Fee** shall mean the annual fee (as such fee may be increased from time to time as provided herein) to be paid by the Club to the CPD in consideration for the Club's Use Rights with respect to the Facility, which is intended to reimburse the CPD for its actual expenses.

**1.97    Fee Credit** shall have the meaning set forth in Article 14.

**1.98    Field** shall mean the Facility's playing field, end zones and sidelines.

**1.99    Field Maintenance** shall have the meaning set forth in Article 23.

**1.100   Final Completion Date** shall have the meaning set forth in the Development Agreement.

**1.101   Financial Closing** shall have the meaning set forth in the Development Assistance Agreement.

1.102 **Financial Obligations** shall mean the Total Permit Fees and any other fees, expenses, payments or monetary obligations which the Club or the Subsidiary owe to the CPD pursuant hereto.

1.103 **Five Day Rule** shall have the meaning set forth in Article 9.

1.104 **Football PSLs** shall mean a contractual agreement with a licensee by which the licensee receives the right to purchase tickets to Bears Games at a specified seat location in the Facility for a designated period of time.

1.105 **Football Season** shall mean a series of football games which includes pre-season and regular season NFL football games (currently twenty in number, ten of which the parties anticipate will be Club home games played at the Facility) and post-season NFL football games, commencing seven days before the Club's first scheduled pre-season football game and ending with the last to occur of the Club's final regular season football game or post-season playoff football game, if any. Any reference to a Football Season for a particular year shall refer to the year which the Club's first scheduled pre-season football game shall be played notwithstanding that the end of such football season may occur in a subsequent calendar year.

1.106 **Force Majeure** shall mean an act of God, strike, fire, riot, civil commotion, governmental action, governmental decree, extraordinary weather conditions, or any other event or circumstance beyond the reasonable control of a party which could not have been reasonably anticipated; provided however, "Force Majeure" shall not include the financial inability of a party to perform and satisfy its obligations and duties hereunder.

1.107 **Franchise** shall mean any member or team of any professional sports league or entertainment league (except for the Club and the NFL), including but not limited to the Chicago Fire and the Chicago Enforcers.

1.108 **Franchise Public Sector Event** shall mean a Public Sector Event which involves a Franchise.

1.109 **Franchise Right of First Refusal** shall have the meaning set forth in Article 12.

1.110 **Future Football PSLs** shall mean any Football PSLs which are not Initial Football PSLs.

1.111 **Future Marketing Rights** shall mean Marketing Rights which may come into existence or evolve over time. Examples of such Future Marketing Rights may include electronically generated signs and advertising, new commercially sponsored communications boards, electronic information units or displays in concourses and seating section, new technologies for broadcast of live action plays and replays, and communication devices enabling displays or audio casts of field and coaching activities.

1.112 **Future Marketing Rights Agreements** shall have the meaning set forth in Section 16.4.

1.113 **Future Marketing Rights Program** shall have the meaning set forth in Section 16.4.

1.114 **Game Day Expenses** shall have the meaning set forth in Article 22.

1.115 **Game Days** shall mean the days on which Bears Games are played at the Facility.

1.116 **Game Day Site** shall mean that area depicted on <u>Exhibit A</u>; provided that the Game Site Area shall not include any public streets or roads. The parties acknowledge that such site depiction may be modified by mutual written agreement of the Club and the CPD upon the final completion of the Project.

1.117 **General Superintendent** shall mean the general superintendent (or his designee) of the CPD.

1.118 **GMAX Contract** shall mean that certain GMAX agreement dated July 16, 2001 entered into by and among Subsidiary, Turner Construction Company/Barton Malow Company/Kenny Construction Company, a joint venture, and the Architect.

1.119 **Governmental Authority** shall mean any federal, state or local governmental authority, unit, district or entity or any agency, division or department thereof, including, but not limited to, the State of Illinois, the City, the CPD and the Authority.

1.120 **Hazardous Materials** shall mean any hazardous, toxic or dangerous substance, material and waste, including, without limitation, hydrocarbons (including naturally occurring or man-made petroleum and hydrocarbons), flammable explosives, asbestos, urea formaldehyde insulation, radioactive materials, biological substances, polychlorinated biphenyls, pesticides, herbicides and any other kind and/or type of pollutants or contaminants (including, without limitation, materials which include hazardous constituents), sewage, sludge, industrial slag, solvents and/or any other similar substances, materials or wastes that are or become regulated under any Environmental Law (including without limitation, any that are or become classified as hazardous or toxic under any Environmental Law).

1.121 **Health and Safety Capital Improvements** shall have the meaning set forth in Article 20.

1.122 **Improper Relocation** shall mean a relocation or the playing of any Bears Game at a site other than the Facility for any reason or circumstance whatsoever except for the following reasons or circumstances: (i) a determination by an Arbitrator that a CPD Terminating Default has occurred and the Club properly exercises the Bears Termination Remedy; (ii) the occurrence of substantial damage to the Facility and the CPD provides written notice to the Club that the CPD does not intend to repair or rebuild the Facility; (iii) a Special Game; (iv) the construction or making of Capital Improvements which entitles the Club to play such Bears Game at another location, as provided for in Section 20.7, (v) a Force Majeure renders unfit or unavailable the Facility for a Bears Game and the Club is entitled to play such Bears Game at another location, as provided for in Section 34; (vi) a Temporary Taking of a Material Part of the Facility occurs and the Club is entitled to play such Bears Game at another location, as provided for in Section 36; and (vii) any temporary relocation or playing of a Bears Game at another facility for the period of time during which the overall Facility is unuseable or is not in a condition which substantially satisfies the conditions set forth in

Section 5.4.   An improper termination of this Agreement by the Club or a Club Terminating Event shall be deemed an Improper Relocation in the event that it can be proven that prior to such improper termination by the Club or a Club Termination Event the Club engaged in discussions or negotiations with any third party or entered into any understanding or agreement with any third party with respect to the relocation or the playing of any Bears Games at a site other than the Facility.

1.123 **Indemnified Party** shall have the meaning set forth in Article 31.

1.124 **Initial Football PSLs** shall mean the Football PSLs initially to be sold in connection with the financing of the Project and which are sold prior to the Final Completion.   The parties anticipate that the number of Initial Football PSLs will be approximately 30,000.

1.125 **Initial Football PSL Licensee** shall mean a holder or a licensee of an Initial Football PSL.

1.126 **Invitee** shall mean the Club's employees, representatives, agents, independent contractors, guests, patrons, licensees, invitees and Concessionaries, to whom the Club has given the right or license to use or occupy the Facility or the Game Day Site (or any portion thereof).

1.127 **ISFA Act** shall mean the Illinois Sports Facilities Authority Act, as amended from time to time.

1.128 **Law** shall mean any law, statute, rule, code, regulation, ordinance, award, order, decree, judgment, injunction or policy of or by the City, the PBC, the CPD, or any other Governmental Authority or judicial body.

1.129 **Leasehold and Use Taxes** shall mean all taxes imposed on leasehold interests in the Facility or on use rights to the Facility as in effect from time to time.

1.130 **LCDs** shall mean the liquid crystal displays in the Facility.

1.131 **Lien** shall mean any security interest, encumbrance, mortgage, pledge, hypothecation, judgment lien or similar legal process, title retention lien, or other lien including, without limitation, the interest of a vendor under any conditional sale or other title retention agreement, and the interest of a lessor under a lease of any interest in any kind of property or asset, whether real, personal or mixed, or tangible or intangible, by such person or entity as lessee.

1.132 **Lienholder** shall have the meaning set forth in Article 28.

1.133 **Litigation**   shall mean The Friends of the Parks, et al. v. The Chicago Plan Commission of the City of Chicago, et al.; Case No. 01 CH 6260.

1.134 **Local Media** shall mean local radio stations, television stations and newspapers and other similar local media which may come into existence or evolve over time (e.g., internet based local media) which perform the same function as local radio stations, television stations and newspapers.

1.135 **Losses** shall mean all liabilities, equitable remedies, losses, costs, fees, fines, damages, judgments, demands, penalties and expenses (including, but not limited to reasonable attorneys' fees and the costs of investigation and litigation).

**1.136 Major College Football Game** shall mean a football game involving two major college football programs.

**1.137 Major Corporate Sponsor** shall mean a sponsor of the Club who makes significant expenditures in advertising or sponsorship of Bears Games or who makes a significant purchase of Marketing Rights. For the avoidance of doubt, the purchase of season tickets, PSLs or Suites does not qualify for treatment as a Major Corporate Sponsor, but may be elements of an overall sponsorship program of a Major Corporate Sponsor.

**1.138 Major Event** shall mean a major national or international event such as, but not limited to, World Cup Soccer, the Goodwill Games, the Pan Am Games or the Olympics.

**1.139 Marketing Rights** shall mean Signage Rights, Naming Rights, Entitlement Rights and Product Rights.

**1.140 Material Part** shall have the meaning set forth in Article 36.

**1.141 Mayor's High School Championship Game** shall mean the City's high school championship football game.

**1.142 Media Rights** shall have the meaning set forth in Article 17.

**1.143 Memorandum of Agreement** shall mean that certain memorandum of agreement dated August 22, 1980 between the CPD and the Club, as supplemented by that certain Agreement dated April 7, 1988 between the CPD and the Club, as extended and amended by that certain Permit Extension Agreement dated August 18, 1999 by and between the CPD and the Club.

**1.144 Mid-South Parking Structure** shall mean the two story parking structure south of Waldron Drive as described in the Project Plans.

**1.145 Miscellaneous Taxes** shall mean all taxes imposed on the sale, licensing or issuance of PSLs, Club Seat Licenses, Suite Licenses and Marketing Rights.

**1.146 MOU** shall mean that certain memorandum of understanding dated November 15, 2000 by and between the Club and the CPD.

**1.147 Museum Campus** shall mean the Field Museum, the Alder Planetarium, the Shedd Aquarium and the surrounding area.

**1.148 Naming Rights** shall mean the rights granted to a Major Corporate Sponsor (i) to name the Facility, (ii) to use such name in connection with its advertising, promotions and marketing, (ii) to display, place and affix Signage and other advertising at the Facility, (iii) to require others, including the CPD and other users of the Facility, to use such name in their references to the Facility in advertising, promoting, marketing, and otherwise, (iv) to prohibit any Direct Competitor from advertising, promoting or marketing itself or its products or services in the Facility and North Parking Structure, and (v) to use on a non-exclusive basis subject to the consent of the CPD, which consent will not be unreasonably withheld, the "image and likeness" of the Facility in its advertising, promotions and marketing.

**1.149 Naming Rights Agreements** shall have the meaning set forth in Article 16.

**1.150 Naming Rights Program** shall have the meaning set forth in Article 16.

**1.151 Naming Rights Sponsor** shall mean that certain Major Corporate Sponsor to which Naming Rights have been granted.

**1.152 Naming Rights Sponsor's Business** shall mean the primary business of the Naming Rights Sponsor.

**1.153 Naming Rights Sponsor's Prohibition Rights** shall mean those rights set forth in subclause (iv) of the definition of Naming Rights.

**1.154 National Public Sector Event** shall mean any Public Sector Event which is part of a national or international tour (i.e., concert tour) or series of shows, performances or competitions.

**1.155 National Public Sector Event Sponsor** shall mean any Public Sector Event Sponsor who sponsors a National Public Sector Event.

**1.156 Natural Turf** shall mean a natural grass playing surface covering the Field.

**1.157 NFL Major Event** shall mean the Super Bowl, pro-bowl game, all star game or other major event sponsored by the NFL.

**1.158 NFL** shall mean the National Football League, an unincorporated association of professional football clubs, of which the Club is a member.

**1.159 NFL Days** shall mean those days on which NFL playoff games, the Super Bowl, NFL draft day and Club regular season away games occur.

**1.160 NFL Experience** shall mean an entertainment event conducted by or under the auspices of the NFL in which NFL football is promoted through visual and interactive displays, depictions, and simulations or other presentations intended to stimulate interest in football.

**1.161 NFL Schedule** shall mean the schedule for NFL games as set forth by the NFL.

**1.162 NFL Season** shall mean a series of NFL football games which includes pre-season and regular season NFL football games (currently twenty in number, ten of which are played at Soldier Field) and post-season NFL football games, commencing seven days before the Club's first scheduled pre-season football game and ending with the last to occur of the Club's final regular season football game or post-season playoff game, if any.

**1.163 NFL Strike** shall mean an NFL players' strike, NFL umpires' strike, and NFL owners' lock out of the players.

**1.164 North Parking Structure** shall mean the parking structure north of the Facility as described in the Project Plans.

**1.165 Non-Franchise Public Sector Event** shall mean any Public Sector Event which is not a Franchise Public Sector Event.

1.166 **Non-Franchise Right of First Refusal** shall have the meaning set forth in Article 12.

1.167 **Operation Assistance Agreement** shall mean that certain operation assistance agreement dated as of August 1, 2001 by and between the CPD and the Authority.

1.168 **Operating Expenses** shall have the meaning set forth in Article 21.

1.169 **Option Limitations** shall have the meaning set forth in Article 3.

1.170 **Option Notice** shall have the meaning set forth in Article 3.

1.171 **Ordinary Capital Improvements** shall have the meaning set forth in Article 20.

1.172 **Original Term** shall have the meaning set forth in Article 3.

1.173 **Other Capital Improvements** shall mean any Capital Improvement which is not a Health and Safety Capital Improvement, a Colonnade Capital Improvement, a Ordinary Capital Improvement, or a Club Capital Improvement.

1.174 **Panel** shall mean the panel of arbitrators as selected pursuant to Article 33.

1.175 **Parking** shall mean parking spaces and lots available to patrons of the Facility as described on the Project Plans.

1.176 **Parking Allotment** shall mean 4,250 parking spaces to be purchased by the Club from the CPD on Game Days.

1.177 **Parking Allotment Fee** shall mean the annual fee (as such fee may be increased from time to time as provided herein) to be paid by the Club to the CPD in consideration for the Club's Use Rights with respect to the Parking Allotment.

1.178 **Parking Allotment Taxes** shall mean all taxes related to the Club's use, sale or authorization of the use of the Parking Allotment.

1.179 **Parkland** shall mean the parkland and other area surrounding Soldier Field, as renovated and improved in accordance with the Project Plans or by mutual agreement of the CPD and the Club.

1.180 **PBC** shall mean the Public Building Commission of Chicago, established pursuant to the Public Building Commissioner Act.

1.181 **Product Rights** shall mean the right to sell or license to a third party the exclusive right to supply the Concessionaries with a specific type of Concession product.

1.182 **Product Rights Program** shall have the meaning set forth in Article 16.

1.183 **Product Rights Agreement** shall have the meaning set forth in Article 16.

1.184 **Project** shall mean the adaptive reuse of Soldier Field, the construction of the North Parking Structure and the Mid-South Parking Structure, and the repairs and improvements to the South Parking Lot, and the improvements and construction of the Parklands as described in the Project Plans.

1.185 **Project Costs** shall mean all costs and expenses incurred in the Project as contemplated by the Transaction Documents.

1.186 **Project Funds** shall mean all private and public funds available for financing the Project as contemplated by the Development Assistance Agreement.

1.187 **Project Plans** shall mean those certain drawings and specification as prepared by the Architect, and referenced in the Development Agreement, with respect to the Project, as such plans may be amended or agreed to by the Club and the CPD.

1.188 **Project Site** shall be the site as described in the Development Agreement.

1.189 **Property Tax** shall mean all real estate taxes and assessments which are levied against the Facility or any component thereof. Such Property Taxes include all real and special taxes levied by any Governmental Authority so long as such tax is based upon or measured by the valuation of the Facility or any component thereof.

1.190 **PSL Licensee** shall mean the holder or licensee of a PSL.

1.191 **PSL** shall mean Football PSLs and Public Sector Event Sponsor PSLs.

1.192 **Public Sector Event** shall mean an event to be held or sponsored at the Facility (or any part thereof) sponsored by the CPD or any party directly or indirectly authorized to hold or sponsor an event at the Facility (or any part thereof) by the CPD other than the Club or a Major Corporate Sponsor of the Club.

1.193 **Public Sector Event Sponsor** shall mean a sponsor of a Public Sector Event.

1.194 **Public Sector Event Sponsor PSLs** shall mean a contractual agreement between a licensee and the CPD and/or a Public Sector Event Sponsor by which the licensee receives the right to purchase tickets to Public Sector Events at a specified seat location in the Facility for a designated period of time.

1.195 **Right of First Refusal** shall mean a Franchise Right of First Refusal and a Non-Franchise Right of First Refusal.

1.196 **Routine Maintenance** shall have the meaning set forth in Article 19.

1.197 **Sales Tax** shall mean all local, state and federal taxes imposed on the sale of goods and services as in effect from time to time.

1.198 **Schedule Request Confirmation** shall have the meaning set forth in Article 10.

1.199 **Schedule Request Denial** shall have the meaning set forth in Article 10.

1.200 **Scheduling Procedures** shall have the meaning set forth in Article 10.

1.201 **Scheduling Request** shall mean a written request submitted by the Club to the CPD pursuant to which the Club requests to exercise its Club Use Rights.

1.202 **Signage** shall mean logos, banners, advertising and signs which promote, market or advertise products, services, ideas, activities, persons, entities, organizations or anything else.

**1.203 Signage Plan** shall mean a plan which sets forth the location, size, scope and type of Signage to be placed inside and on the exterior of the Facility.

**1.204 Signage Rights** shall mean the right to display, place and affix Signage, and the right to sell and license to others the right to display, place and affix Signage.

**1.205 Signage Rights Agreements** shall have the meaning set forth in Article 16.

**1.206 Signage Rights Program** shall have the meaning set forth in Article 16.

**1.207 Soldier Field** shall mean the stadium located at 425 East McFetridge Drive in Chicago, Illinois and commonly known as "Soldier Field."

**1.208 South Parking Lot** shall mean that surface parking lot south of the Facility as described in the Project Plans.

**1.209 Special Games** shall mean the pre-season, regular-season and post-season games for which the Club is the "home team" but nonetheless the NFL schedules such game at a location other than the Facility (e.g. Canton, Ohio or outside the United States).

**1.210 Specifications** shall have the meaning set forth in the Development Agreement.

**1.211 Sponsor-Related Events** shall mean an event (i) related solely to the business of a Major Corporate Sponsor, (ii) held in the Club Lounge at the Facility, (iii) paid for by the Club or by such Major Corporate Sponsor of the Club, and (iv) for usage by such Major Corporate Sponsor's employees and/or business customers, but not the general public. With respect to a Sponsor-Related Event, the Major Corporate Sponsor may not sell or give away tickets to the general public or to Bears Ticket Holders.

**1.212 Sports Team Tax** shall mean any taxes applicable solely to the property or business of sports teams or admission to sporting events as in effect from time to time.

**1.213 Stadium Seating** shall mean that area or location within the Facility designated as stadium seating on the Project Plans or by mutual agreement by the Club and the CPD.

**1.214 Standard Arbitration** shall have the meaning set forth in Article 33.

**1.215 Substantial Completion of the Stadium and North Garage** shall have the meaning set forth in the Development Agreement.

**1.216 Suites** shall mean the private box suites to be built as shown on the Project Plans and private box suites, if any, to be built in the future at the Facility.

**1.217 Suite License** shall mean a contractual agreement with a licensee by which a licensee receives the right to use and occupy a Suite.

**1.218 Suite Licensee** shall mean the holder or licensee of a Suite License.

**1.219 Super Bowl** shall mean the NFL's league championship game which is currently called the "Super Bowl."

**1.220 Tailgate Parties** shall mean tailgate parties and other similar and related activities engaged in by the patrons of Bears Games.

**1.221 Tax Agreement** shall have the meaning set forth in the Development Assistance Agreement.

**1.222 Team Areas** shall mean the following areas located within the Facility: (i) Bears Administrative Offices; (ii) the Bears Hall of Fame (if any); (iii) the Bears Retail Store (if any); (iv) the Bears Locker Room; (v) Bears Storage Areas (vi) Bears Sports Bar/Restaurant (if any); and (vii) such other areas designated in the Project Plans or by mutual agreement of the Club and the CPD.

**1.223 Temporary Taking** shall have the meaning set forth in Section 36.2.

**1.224 10 Year Upgrades** shall have the meaning set forth in Section 20.5.4.

**1.225 Term** shall mean the Original Term plus any Extension Terms.

**1.226 34 Dates** shall have the meaning set forth in Article 6.

**1.227 Total Permit Fee** shall mean the Facility Fee plus the Parking Allotment Fee.

**1.228 2003 Per Game Facility Fee** shall equal Four Hundred Seventy Thousand and No/100ths Dollars ($470,000.00).

**1.229 2003 Per Game Parking Allotment Fee** shall equal the difference between (a) $100,000 and (b) (i) $20.00 multiplied by the difference between (ii) 4,250 and the number of parking spaces available to the Club in the North Parking Structure, the Mid-South Parking Structure and the South Parking Lot for the applicable Bears Game.

**1.230 Transaction Documents** shall mean this Agreement, Development Assistance Agreement, the Development Agreement and the Operation Assistance Agreement.

**1.231 Video Boards** shall mean the video board and video board room as set forth on the Project Plans or by mutual agreement of the Club and the CPD.

**1.232 Weekday Practice** shall mean a weekday practice by the Club at the Facility during the Football Season.

**1.233 White Sox** shall mean the Chicago White Sox, Ltd., an Illinois limited partnership, and any successor thereof.

## ARTICLE 2.
## REPRESENTATIONS AND WARRANTIES.

**2.1    Representations, Warranties and Covenants Relating to the Club.** The Club and the Subsidiary jointly and severally represent, warrant and covenant to the CPD as follows:

        **2.1.1    Organization.** The Club is a corporation duly organized, existing and in good standing under the laws of the State of Delaware. The Club possesses full

and adequate corporate power and authority to own, operate and lease its properties, and to carry on and conduct its business as it is currently being conducted. The Club is duly qualified or licensed to conduct business as a foreign corporation in the State of Illinois.

2.1.2     Authorization.  The Club has the full right, power and authority to execute and deliver this Agreement and to perform and satisfy its obligations and duties under this Agreement.  The execution, delivery and performance of this Agreement by the Club has been duly and fully authorized and approved by all necessary and appropriate action, and a true, complete and certified copy of the authorizing resolutions has been delivered to the CPD.  This Agreement has been duly executed and delivered by the Club.

2.1.3     Binding Obligation.  This Agreement constitutes the legal, valid and binding obligations of the Club, and is enforceable against the Club in accordance with its terms.

2.1.4     No Conflict.

(a)     Governing Documents.  The execution, delivery and performance of this Agreement do not and will not result in or cause a violation or breach of or a conflict with any provision of the Club's articles of incorporation, by-laws or other governing documents, or the rules, regulations, policies or by-laws of the NFL which will have a material adverse effect on the Club's ability to perform and satisfy its obligations and duties under this Agreement.

(b)     Law.  The execution, delivery and performance of this Agreement by the Club do not and will not result in or cause a violation or breach of or a conflict with any statute, law, code, ordinance, rule, regulation, judgment, order, writ, arbitral award, decree or injunction applicable to the Club or any of its properties or assets which will have a material adverse effect on the Club's ability to perform and satisfy its obligations and duties under this Agreement.

(c)     Contracts.  The execution, delivery and performance of this Agreement by the Club do not and will not result in a breach or violation of, conflict with, constitute a default under, require any consent, approval, waiver, amendment, authorization, notice or filing under any agreement, contract, understanding, instrument, mortgage, lease, indenture, document or other obligation to which the Club is a party or by which the Club or any of its properties or assets are bound which will have a material adverse effect on the Club's ability to perform and satisfy its obligations and duties under this Agreement.

2.1.5     Subsidiary Ownership.  The Club is the sole member and owner of the Subsidiary free and clear of any claims, Liens, security interests, pledges and encumbrances of any kind.

2.1.6    Taxes.  The Club has not failed to file any applicable income or other tax returns or to pay any income or other taxes when due which failure would have a material adverse effect on the Club's ability to perform and satisfy its obligations and duties under this Agreement.  There is no controversy or objection pending, or to the knowledge of the Club, threatened in respect of any tax return of the Club which would have a material adverse effect on the Club's ability to perform and satisfy its obligations and duties under this Agreement.

2.1.7    Place of Business.  The principal place of business of the Club is Halas Hall at Conway Park, 1000 Football Drive, Lake Forest, Illinois 60045 and the Club shall provide the CPD prompt written notice of any change in such location.

2.1.8    Absence of Litigation.  There is no action, suit, proceeding, claim, arbitration, or investigation pending or, to the Club's knowledge, threatened by any person or entity, against the Club or its assets or properties which if unfavorably determined would have a material adverse effect on the Club's ability to perform and satisfy its obligations and duties under this Agreement.

2.1.9    Scope of License.  The Club has not and will not grant or convey nor attempt to grant or convey to any Concessionaire, Invitee or other party any rights, interests or licenses which are in conflict or inconsistent with or violate this Agreement or otherwise exceed the scope of the Club's rights, interests and licenses hereunder.

2.1.10    Environmental Laws and Hazardous Substances.  The Club represents, warrants and covenants that (i) the Club will not generate, use, store, treat, transport, manufacture, handle, produce or dispose of any Hazardous Materials, on, in or about the Environmental Area, except for amounts customarily used in stadiums and in compliance with all Environmental Laws and all licenses, permits, certificates, approvals and similar authorizations issued to the Club thereunder; (ii) with respect to the Environmental Area, the operations of the Club will comply with all Environmental Laws and all licenses, permits certificates, approvals and similar authorizations issued to the Club thereunder; (iii) with respect to the Environmental Area, the Club shall immediately notify the CPD upon becoming aware of any investigation, proceeding, complaint, order, directive, claim, citation or notice by any Governmental Authority or any other person or entity directed against the Club, or threatened against the Club; and shall take prompt and appropriate actions to respond thereto; (iv) with respect to the Environmental Area, the Club shall immediately notify the CPD upon becoming aware of any non-compliance with, or violation of, the requirements of any Environmental Law by the Club or the release, spill or discharge, threatened or actual, of any Hazardous Material or the generation, use, storage, treatment, transportation, manufacture, handling, production or disposal of any Hazardous Material or any other environmental, health or safety matter, which affects the Club or its business, operations, assets or the Environmental Area; (v) with respect to the Environmental Area, the Club will have no material liability, contingent or otherwise, in connection with a release, spill or discharge, threatened or actual, of any Hazardous Materials or the generation, use, storage, treatment, transportation, manufacture, handling, production or disposal of any

Hazardous Material; and (vi) without limiting the generality of the foregoing, the Club shall, following determination by the CPD that there is a breach of the foregoing representations, warranties or covenants, at the Club's sole expense, cause an independent environmental engineer acceptable to the CPD to conduct such tests of the relevant site as are appropriate, and prepare and deliver a report setting forth the result of such tests, a proposed remediation plan and an estimate of the costs thereof; provided in the event that such environmental engineer does not find or conclude that any fact, circumstance or condition occurred or exists that is a breach any of the foregoing representations, warranties and covenants, then the Club shall be entitled to reimbursement from the CPD for its expenses and costs paid to such environmental engineer.    In the event that the Club hires, employs, authorizes or directs an environmental engineer or any other party to perform or conduct any tests or analysis or to gather or collect information or data with respect to any matter related to the Environmental Laws in connection with the Environmental Area, the Club shall promptly notify the CPD and shall promptly provide the CPD with copies of these tests results, analysis information and data, and all reports and remediation plans related thereto. Without the prior written consent of the CPD or as required by law or judicial decree, the Club shall not disclose to any other party these tests results, analysis, information or data.  The Club shall provide that the CPD, at the CPD's option, may accompany the environmental consultant on the environmental consultant's visits to the Environmental Area.  Upon completion of any remediation plan and the approval thereof by CPD, the Club shall promptly, at its own cost and expense, undertake and perform such remediation plan by contractors reasonably acceptable to CPD, and if required by Environmental Laws, obtain from the applicable Governmental Authority a closure letter or other evidence that the Environmental Area complies with applicable Environmental Laws. The representations, warranties and covenants of the Club in this Section 2.1.10 shall be deemed to be made as of the Final Completion Date.  Without limiting the foregoing, the Club is making no representation, warranty or covenant as of the date of this Agreement as to whether the Environmental Area is currently in compliance with Environmental Laws or as to whether there currently exists any Hazardous Materials in, on, or under the Environmental Area, and specifically disclaims any such representations, warranties and covenants under this Agreement.

**2.2    Representations, Warranties and Covenants Relating to the CPD.** The CPD represents, warrants and covenants to the Club and the Subsidiary as follows:

2.2.1    Organization.    The CPD is a municipal corporation duly organized and existing pursuant to 70 Illinois Compiled Statutes §1505/1 et seq.  The CPD possesses full and adequate power and authority to own, operate and lease its properties, and to carry on and conduct its business as it is currently being conducted.

2.2.2    Authorization.  The CPD has the full right, power and authority to execute and deliver this Agreement and to perform and satisfy its obligations and duties under this Agreement.  The execution, delivery and performance of this Agreement by the CPD has been duly and fully authorized and approved by all necessary and appropriate action, and a true, complete and certified copy of the

authorizing resolutions has been delivered to the Club. This Agreement has been duly executed and delivered by the CPD.

2.2.3    <u>Binding Obligation and Enforcement</u>. This Agreement constitutes the valid and binding obligations of the CPD, and is enforceable against the CPD in accordance with its terms.

2.2.4    <u>No Conflict</u>.

(a)    <u>Governing Documents</u>. The execution, delivery and performance of this Agreement by the CPD do not and will not cause or result in a violation or breach of, or conflict with any provision of the CPD's governing documents or rules, policies or regulations applicable to the CPD which will have a material adverse affect on the ability of the CPD to perform and satisfy its obligations and duties under this Agreement.

(b)    <u>Law</u>. The execution, delivery and performance of this Agreement by the CPD does not and will not cause or result in a violation or breach of or conflict with any statute, law, code, ordinance, rule, regulation, judgment, order, writ, arbitral award, decree or injunction applicable to the CPD or any of its properties or asset, which will have a material adverse affect on the ability of the CPD to perform and satisfy its obligations and duties under this Agreement.

(c)    <u>Contracts</u>. The execution, delivery and performance of this Agreement by the CPD do not and will not cause or result in a violation or breach of or conflict with, constitute a default under, require any consent, approval, waiver, amendment, authorization, notice or filing under any agreement, contract, understanding, instrument, mortgage, lease, indenture, document or other obligation to which the CPD is a party or by which the CPD or any of its properties or assets are bound which will have a material adverse affect on the ability of the CPD to perform and satisfy its obligations and duties under this Agreement.

2.2.5    <u>Place of Business</u>. The principal place of business of the CPD is 541 North Fairbanks Court, Chicago, Illinois 60611, and the CPD shall provide the Club with prompt written notice of any change in such location.

2.2.6    <u>Absence of Litigation</u>. There is no action, suit, proceeding, claim, arbitration, or investigation pending or, to the General Superintendent's knowledge, threatened by any person or entity, against the CPD or its assets or properties which if unfavorably determined against the CPD would have a material adverse effect on the CPD's ability to perform and satisfy its obligations and duties under this Agreement.

2.2.7    <u>Environmental Laws and Hazardous Substances</u>. The CPD represents, warrants and covenants that (i) to the best of the CPD's knowledge, the CPD and its invitees (excluding the Club and the Subsidiary) will not generate, use,

06298/00024/189933/20

- 21 -

store, treat, transport, manufacture, handle, produce or dispose of any Hazardous Materials, on, in or about the Environmental Area, except for amounts customarily used in stadiums and in compliance with all Environmental Laws and all licenses, permits, certificates, approvals and similar authorizations issued to the CPD and its invitees (excluding the Club and the Subsidiary) thereunder; (ii) with respect to the Environmental Area, the operations of the CPD and its invitees (excluding the Club and the Subsidiary) will comply with all Environmental Laws and all licenses, permits certificates, approvals and similar authorizations issued to the CPD and its invitees (excluding the Club, the Subsidiary and their invitees) thereunder; (iii) with respect to the Environmental Area, the CPD shall immediately notify the Club upon becoming aware of any investigation, proceeding, complaint, order, directive, claim, citation or notice by any Governmental Authority or any other person or entity directed against the CPD or its invitees, or threatened against the CPD or its invitees, and shall take prompt and appropriate actions to respond thereto; (iv) with respect to the Environmental Area, the CPD shall immediately notify the Club upon becoming aware of any non-compliance with, or violation of, the requirements of any Environmental Law by the CPD or the release, spill or discharge, threatened or actual, of any Hazardous Material or the generation, use, storage, treatment, transportation, manufacture, handling, production or disposal of any Hazardous Material or any other environmental, health or safety matter, which affects the CPD or its business, operations, assets or the Environmental Area; and (v) without limiting the generality of the foregoing, the CPD shall, following determination by the Club that there is a breach of the foregoing representations, warranties or covenants, at the CPD's sole expense, cause an independent environmental engineer acceptable to the Club to conduct such tests of the relevant site as are appropriate, and prepare and deliver a report setting forth the result of such tests, a proposed remediation plan and an estimate of the costs thereof; provided in the event that such environmental engineer does not find or conclude that any fact, circumstance or condition occurred or exists that is a breach any of the foregoing representations, warranties and covenants, then the CPD shall be entitled to reimbursement from the Club for its expenses and costs paid to such environmental engineer.   In the event that the CPD hires, employs, authorizes or directs an environmental engineer or any other party to perform or conduct any tests or analysis or to gather or collect information or data with respect to any matter related to the Environmental Laws in connection with the Environmental Area, the CPD shall promptly notify the Club and shall promptly provide the Club with copies of these tests results, analysis information and data, and all reports and remediation plans related thereto. Without the prior written consent of the Club or as required by law or judicial decree, the CPD shall not disclose to any other party these tests results, analysis, information or data.  The CPD shall provide that the Club, at the Club's option, may accompany the environmental consultant on the environmental consultant's visits to the Environmental Area.  Upon completion of any remediation plan and the approval thereof by Club, the CPD shall promptly, at its own cost and expense, undertake and perform such remediation plan by contractors reasonably acceptable to the Club, and if required by Environmental Laws, obtain from the applicable Governmental Authority a closure letter or other evidence that the Environmental Area complies with applicable Environmental Laws.  The representations, warranties and covenants of the CPD in this Section 2.2.7

shall be deemed to be made as of the Final Completion Date. Without limiting the foregoing, the CPD is making no representation, warranty or covenant as of the date of this Agreement as to whether the Environmental Area is currently in compliance with Environmental Laws or as to whether there currently exists any Hazardous Materials in, on or under the Environmental Area and specifically disclaims any such representations, warranties or covenants under this Agreement. For purposes of this Section 2.2.7, "knowledge" means the actual knowledge of the General Superintendent.

**2.3    Representations, Warranties and Covenants Relating to the Subsidiary.** The Club and the Subsidiary jointly and severally represent, warrant and covenant to the CPD as follows:

2.3.1    <u>Organization</u>. The Subsidiary is a limited liability company duly organized, existing and in good standing under the laws of the State of Delaware. The Subsidiary possesses full and adequate power and authority to own, operate and lease its properties, and to carry on and conduct its business as it is currently being conducted. The Subsidiary is duly qualified or licensed to conduct business as a foreign limited liability company in the State of Illinois.

2.3.2    <u>Authorization</u>. The Subsidiary has the full right, power and authority to execute and deliver this Agreement and to perform and satisfy its obligations and duties under this Agreement. The execution, delivery and performance of this Agreement by the Subsidiary has been duly and fully authorized and approved by all necessary and appropriate action, and a true, complete and certified copy of the authorizing resolutions has been delivered to the CPD. This Agreement has been duly executed and delivered by the Subsidiary.

2.3.3    <u>Binding Obligation and Enforcement</u>. This Agreement constitutes the legal, valid and binding obligations of the Subsidiary, and is enforceable against the Subsidiary in accordance with its terms.

2.3.4    <u>No Conflict</u>.

(a)    <u>Governing Documents</u>. The execution, delivery and performance of this Agreement by the Subsidiary do not and will not cause or result in a violation or breach of, or conflict with any provision of the Subsidiary's certificate of organization, operating agreement or other governing documents, or the rules, regulations, policies or by-laws of the NFL which will have a material adverse affect on the ability of the Subsidiary to perform and satisfy its obligations and duties under this Agreement.

(b)    <u>Law</u>. The execution, delivery and performance of this Agreement by the Subsidiary does not and will not violate, cause or result in a violation or breach of or conflict with any statute, law, code, ordinance, rule, regulation, judgment, order, writ, arbitral award, decree or injunction applicable to the Subsidiary or any of its properties or assets which will have a material adverse affect on the ability of the Subsidiary to perform and satisfy its obligations and duties under this Agreement.

(c)    Contracts.    The execution, delivery and performance of the Agreement by the Subsidiary does not and will not cause or result in a violation or breach of, or conflict with, constitute a default under, require any consent, approval, waiver, amendment, authorization, notice or filing under any agreement, contract, understanding, instrument, mortgage, lease, indenture, document or other obligation to which the Subsidiary is a party or by which the Subsidiary or any of its properties or assets are bound which will have a material adverse affect on the ability of the Subsidiary to perform and satisfy its obligations and duties under this Agreement.

2.3.5    Subsidiary Ownership.    The Club is the sole member and owner of the Subsidiary free and clear of any claims, Liens, security interests, pledges and encumbrances of any kind.

2.3.6    Taxes.    The Subsidiary has not failed to file any applicable income or other tax returns or to pay any income or other taxes when due which failure would have a material adverse affect on the ability of the subsidies to perform and satisfy its obligations and duties under this Agreement.    There is no controversy or objection pending, or to the knowledge of the Subsidiary, threatened in respect of any tax returns of the Subsidiary which would have a material adverse affect on the ability of the Subsidiary to perform and satisfy its obligations and duties under this Agreement.

2.3.7    Place of Business.    The principal place of business of the Subsidiary is Halas Hall at Conway Park, 1000 Football Drive, Lake Forest, Illinois 60045 and the Subsidiary shall provide the CPD prompt written notice of any change in such location.

2.3.8    Absence of Litigation.    There is no action, suit, proceeding, claim, arbitration, or investigation pending or, to the Subsidiary's knowledge, threatened by any person or entity, against the Subsidiary or its assets or properties which if unfavorably determined against the Subsidiary would have a material adverse effect on the Subsidiary's ability to perform and satisfy its duties and obligations under this Agreement.

2.3.9    Scope of License.    The Subsidiary has not and will not grant or convey nor attempt to grant or convey to any Concessionaire, Invitee or other party any rights, interests or licenses which are in conflict or inconsistent with or violate this Agreement or otherwise exceed the scope of the Subsidy's rights, interests and licenses hereunder.

2.3.10    Environmental Laws and Hazardous Substances.    The Subsidiary represents, warrants and covenants that (i) the Subsidiary will not generate, use, store, treat, transport, manufacture, handle, produce or dispose of any Hazardous Materials, on, in or about the Environmental Area except for amounts customarily used in stadium and in compliance with all Environmental Laws and all licenses, permits, certificates, approvals and similar authorizations issued to the Subsidiary thereunder; (ii)

with respect to the Environmental, Area the operations of the Subsidiary will comply with all Environmental Laws and all licenses, permits certificates, approvals and similar authorizations issued to the Subsidiary thereunder; (iii) with respect to the Environmental Area, the Subsidiary shall immediately notify the CPD upon becoming aware of any investigation, proceeding, complaint, order, directive, claim, citation or notice by any Governmental Authority or any other person or entity directed against the Subsidiary or threatened against the Subsidiary; and shall take prompt and appropriate actions to respond thereto; (iv) with respect to the Environmental Area, the Subsidiary shall immediately notify the CPD upon becoming aware of any non-compliance with, or violation of, the requirements of any Environmental Law by the Subsidiary or the release, spill or discharge, threatened or actual, of any Hazardous Material or the generation, use, storage, treatment, transportation, manufacture, handling, production or disposal of any Hazardous Material or any other environmental, health or safety matter, which affects the Subsidiary or its business, operations, assets or the Environmental Area; (v) with respect to the Environmental Area the Subsidiary will have no material liability, contingent or otherwise, in connection with a release, spill or discharge, threatened or actual, of any Hazardous Materials or the generation, use, storage, treatment, transportation, manufacture, handling, production or disposal of any Hazardous Material; and (vi) without limiting the generality of the foregoing, the Subsidiary shall, following determination by the CPD that there is a breach of the foregoing representations, warranties or covenants, at the Subsidiary's sole expense, cause an independent environmental engineer acceptable to the CPD to conduct such tests of the relevant site as are appropriate, and prepare and deliver a report setting forth the result of such tests, a proposed remediation plan and an estimate of the costs thereof; provided, however, in the event that such environmental engineer does not find or conclude that any fact, circumstance or condition occurred or exists that is a breach of any of the foregoing representations, warranties and covenants, then the Subsidiary shall be entitled to reimbursement from the CPD for its expenses and costs paid to such environmental engineer. In the event that the Subsidiary hires, employs, authorizes or directs an environmental engineer or any other party to perform or conduct any tests or analysis or to gather or collect information or data with respect to any matter related to the Environmental Laws in connection with the Environmental Area, the Club shall promptly notify the CPD and shall promptly provide the CPD with copies of these tests results, analysis information and data, and all reports and remediation plans related thereto. Without the prior written consent of the CPD or as required by law or judicial decree, the Club shall not disclose to any other party these tests results, analysis, information or data. The Club shall provide that the CPD, at the CPD's option, may accompany the environmental consultant on the environmental consultant's visits to the Environmental Area. Upon completion of any remediation plan and the approval thereof by CPD, Club shall promptly, at its own cost and expense, undertake and perform such remediation plan by contractors reasonably acceptable to CPD and, if required by Environmental Laws, obtain from the applicable Governmental Authority a closure letter or other evidence that the Environmental Area complies with applicable Environmental Laws. The representations, warranties and covenants of the Subsidiary in this Section 2.3.10 shall be deemed to be made as of the Final Completion Date. Without limiting the foregoing, the Subsidiary is making no representation, warranty or covenant as of

the date of this Agreement as to whether the Environmental Area is currently in compliance with Environmental Laws or as to whether there currently exists any Hazardous Materials in, on, or under the Environmental Area, and specifically disclaims any such representations, warranties and covenants under this Agreement.

**2.4    Survivability.**  Except for the representations and warranties set forth in Sections 2.1.6, 2.1.7, 2.1.8, 2.2.5, 2.2.6, 2.3.6, 2.3.7 and 2.3.8, each of the representations, warranties and covenants made by the parties hereto shall be deemed continuing in nature and shall survive the execution and delivery of this Agreement. The representations and warranties set forth in Sections 2.1.6, 2.1.7, 2.1.8, 2.2.5, 2.2.6, 2.3.6, 2.3.7 and 2.3.8 shall survive until the second anniversary of the Final Completion.

**2.5    Litigation.**  The parties acknowledge the existence of the Litigation.

## ARTICLE 3.
## TERM AND TERMINATION

**3.1    Term.**  The original term ("Original Term") of this Agreement shall commence upon the Financial Closing and shall terminate following the final NFL football game of the year 2033 Football Season, unless extended as provided for herein.  All rights and obligations of the parties hereunder are conditioned on the occurrence of the Financial Closing.

**3.2    Extension Options.**  The Club shall have the option ("Extension Option") to extend the Original Term for four (4) additional periods of five (5) years each ("Extension Terms"), on the same terms and conditions applicable as of the expiration of the Original Term or any Extension Term, as the case may be.  The Club shall exercise an Extension Option by giving the CPD written notice thereof ("Option Notice") within the time period set forth in Section 3.3 below.  Upon receipt by the CPD, such Option Notice shall be irrevocable and shall obligate and bind the Club and Subsidiary for the applicable Extension Term.

**3.3    Limitation on Options.**  Notwithstanding the foregoing, the Club's right to exercise its Extension Option shall be limited as follows ("Option Limitations"):

3.3.1    The Club may not exercise an Extension Option if at the time of exercise or upon the commencement of the Extension Term, a Bears Terminating Default has occurred and is continuing.

3.3.2    The Club may not exercise an Extension Option if at the time of exercise or upon the commencement of the Extension Term, any event has occurred which, with the passage of time, or the giving of notice, or both, would be deemed a Bears Terminating Default.

3.3.3    The Club may not exercise an Extension Option if at the time of exercise or upon the commencement of the Extension Term, a Bears Non-Terminating Default has occurred and is continuing, and the Club has not provided the CPD with reasonable assurances satisfactory to the CPD that such Bears Non-Terminating Default will be promptly cured.

06298/00024/189933/20

3.3.4    The Club may not exercise an Extension Option if at the time of exercise or upon the commencement of the Extension Term, any event has occurred which, with the passage of time, or the giving of notice, or both, would be deemed a Bears Non-Terminating Default, and the Club has not provided the CPD with reasonable assurances satisfactory to the CPD that such Bears Non-Terminating Default will not occur or will be promptly cured.

3.3.5    The Club must exercise any Extension Option by delivering the Option Notice to the CPD at least twenty-four (24) months prior to the expiration of the Original Term or Extension Term, as applicable, and failure (including but not limited to a failure or inability to do so by reason of Section 3.3.1, Section 3.3.2, Section 3.3.3 or Section 3.3.4) to timely exercise an Extension Option shall result in such Extension Option and all future Extension Options becoming null and void.

### 3.4    Rejection of Extension Option.

3.4.1    Rejection Notice.  The CPD in its sole and absolute discretion can reject the Club's Extension Option if the CPD determines in good faith that any Option Limitation is applicable.  The CPD shall provide the Club with written notice of its decision to reject the Club's exercise of its Extension Option ("Rejection Notice").  Upon receipt of such Rejection Notice, if the Club, in good faith, disputes the CPD's basis for such rejection, the Club may submit the matter to Standard Arbitration.  In the event that (i) the Club submits such disputed rejection to Standard Arbitration at least twenty-three (23) months prior to the expiration of the Original Term or Extension Term, as applicable; and (ii) the Panel determines that the CPD had no basis for rejecting the Club's exercise of its Extension Option, then the Club's Extension Option shall be granted notwithstanding any time limitations imposed by Section 3.3.5.

**3.5    Termination by the Club.**  In the event that the Financial Closing does not occur by August 1, 2002, Club may terminate this Agreement by providing written notice to the CPD.

**3.6    Termination by the CPD.**  In the event that the Financial Closing does not occur by August 1, 2002, the CPD may terminate this Agreement by providing written notice to the Club.

**3.7    Mutual Termination.** This Agreement may be terminated at any time by written mutual agreement of the Club and the CPD (signed by the General Superintendent).

**3.8    Effect of Termination.**  The termination, cancellation or expiration of this Agreement shall not release or relieve any party from any obligations or liabilities incurred prior to or as a result of such termination, cancellation or expiration.

**3.9    Marketing Rights.**  Upon the termination, cancellation or expiration of this Agreement, the Marketing Rights and the Future Marketing Rights, if any, of the Club and Subsidiary shall specifically terminate without recourse to the CPD.