IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CHICAGO PARK DISTRICT, an Illinois Municipal Corporation, ) ) ) | |
| Plaintiff, ) ) | Case No. 06 C 3957 |
| v. ) ) | Hon. Blanche M. Manning |
| THE CHICAGO BEARS FOOTBALL CLUB, INC., a Delaware Corporation, and THE CHICAGO BEARS STADIUM LLC, a Delaware Limited Liability Company, ) ) ) ) ) | Magistrate Judge Schenkier |
| Defendants. ) | |

**PLAINTIFF THE CHICAGO PARK DISTRICT'S MEMORANDUM
IN SUPPORT OF ITS EMERGENCY MOTION TO STAY ARBITRATION**

Plaintiff The Chicago Park District ("CPD"), an Illinois municipal corporation, requests this Court enter an emergency temporary stay of a pending arbitration filed by Defendant The Chicago Bears Football Club, Inc. ("the Bears"). This matter is an emergency because on August 4, 2006, over the CPD's objection, in a conference call with the parties, the arbitrator, who was only confirmed on August 3, 2006, set the arbitration (which includes, over the CPD's objection, a constitutional issue pending before this Court on the CPD's Complaint for Declaratory Judgment) for a one-day hearing on August 9, 2006, and stated that she intended to issue a "standard ruling" without issuing a written finding of facts and conclusions of law.

The CPD brings this motion not to circumvent or delay arbitration but to prevent an independent arbitrator from deciding whether the Fourth Amendment prohibits the CPD (as a state entity) from using taxpayer funds to pay for **mass suspicionless pat-down searches at Soldier Field**, which the CPD owns and operates, of all Bears fans entering the stadium on game days this upcoming 2006 season. This far-reaching constitutional issue of great public

importance could affect the civil rights of over 500,000 people in 2006 alone, who are neither parties nor privities to the contract from which the arbitrator purports to derive her authority, and should not be decided in an expeditious and haphazard fashion.[1]

## INTRODUCTION

As detailed in the CPD's Complaint, the Fourth Amendment prohibits the CPD (as a state entity) from paying for the proposed suspicionless searches. A recent decision by a United States District Court in Florida affirmed the CPD's position when it refused to dissolve an injunction entered by a Florida state court enjoining the municipal stadium owner in Tampa Bay from paying for mass suspicionless pat-downs at National Football League ("NFL") games in Tampa Bay at a publicly owned stadium. (A copy of the Florida federal and state court decisions are attached as Exs. A and B to the CPD's separately filed Appendix in Support of Motion to Stay ("App. Ex.").) The District Court held that regardless of the agreement governing the NFL Tampa Bay team's use of the public stadium, the Tampa Bay municipal stadium owner "**cannot contractually obligate itself to perform its responsibility to maintain the Stadium in an unconstitutional manner.**" (App. Ex. A at 9) (Emphasis added).

Despite these Florida decisions and the present action before this Court, the Bears continue to seek to force arbitration of "which of the parties is required to pay," under the agreement governing Soldier Field ("the Permit and Operating Agreement" ("POA")), for the mass suspicionless pat-down searches at Soldier Field, which the NFL is requiring at all stadiums hosting NFL games this upcoming 2006 football season. (Bears' Demands for Arbitration, App. Ex. C.)

---

[1] Soldier Field seats roughly 65,000 ticket holders and the Bears will play 10 sold-out home games this upcoming season.

2

Although the Bears did not demand arbitration on the constitutional issue precluding the CPD from paying for the mass suspicionless pat-downs, on August 3, 2006, in a preliminary phone conference with the arbitrator and the Bears, over the CPD's objections, the arbitrator stated that, regardless of the CPD's action pending before this Court and the Florida decisions, she intended to rule on the Fourth Amendment issue affecting the civil rights of the 500,000 plus Bears fans not parties or privities to the POA.

To further compound the problem, on August 4, 2006, in a conference call with the parties, the arbitrator, over the CPD's objection, who was only confirmed on August 3, 2006, set the matter (including the constitutional issue pending before this Court on the CPD's Complaint for Declaratory Judgment) for a one-day hearing on August 9, 2006. In setting the arbitration on August 9th the arbitrator also denied the CPD's request for limited written and oral discovery on all issues including the Fourth Amendment dispute but instead limited discovery to the exchange of exhibits two days before the hearing. The arbitrator also stated that, regardless of the important constitutional rights at stake, she intended to issue a "standard ruling" without issuing a written finding of facts and conclusions of law.

Accordingly, the CPD has no choice but to request that this Court enter an emergency temporary stay of the August 9th arbitration until this Court rules on the overriding constitutional issue currently before the Court.

## ARGUMENT

As a result of the refusal of the arbitrator and the Bears to stay arbitration pending a decision by this Court but to instead attempt to arbitrate the overriding Fourth Amendment question, the CPD has no choice but to request that this Court temporarily stay the arbitration until this Court, not a private arbitrator, decides whether the Fourth Amendment prohibits the

3

CPD (as a municipal corporation) from using taxpayer funds to pay for mass suspicionless pat-downs searches of all fans entering Soldier Field this 2006 season.[2]

A temporary stay is proper here because:

- the arbitration provision in the POA does not (and cannot) foreclose this Article III Court from deciding a single far reaching, purely legal, constitutional issue of great public importance, which the Bears did not raise in either of its written arbitration demands (App. Ex. C), that could affect the civil rights of over 500,000 fans in 2006 alone, who are not parties or privities to the POA;

- if this Court does not stay this action and the arbitrator, as she stated she intends to do, decides the constitutionality of the suspicionless pat-down searches, the CPD and the Bears will end-up back before this Court because the arbitrator's decision will not preclude the hundreds of thousands of fans (not parties or privities to the POA), who will be subject to the unconstitutional searchers, from seeking to enjoin the enforcement of the mass pat-downs by the CPD, as a fan in Tampa Bay successfully did (see App. Exs. A and B); and

- the overriding Fourth Amendment issue here is primary to the contractual dispute under the POA so that the arbitrator cannot decide who under the POA is responsible for conducting and paying for the suspicionless pat-downs at Soldier Field until this Court determines whether the Fourth Amendment precludes the CPD from even undertaking performance of this obligation.

The POA cannot divest this Court of its inherent authority under Article III to decide constitutional issues of "great public importance" that extend well beyond the two parties to the POA. See Beckman Instruments, Inc. v. Tech. Dev. Corp., 433 F.2d 55, 63 (7th Cir. 1970) (affirming district court's decision to stay arbitration of ancillary issues pending a ruling on an issue of "vital public importance" raised in the plaintiff's complaint for declaratory judgment).

---

[2] Federal courts have clearly stated that, in the appropriate circumstances, an order to stay arbitration is within the power of the district court. See Tai Ping Insurance Co. v. M/V Warschau, 731 F2d 1141, 1144 (5th Cir. 1984) (holding that the district court had the authority to enjoin arbitration); L.F. Rothschild & Co., Inc. v. Katz, 702 F.Supp. 464, 467 (S.D.N.Y. 1988) (enjoining parties from proceeding with arbitration); Jab Industries, Inc. v. Silex S.P.A., 601 F.Supp. 971, 979 (S.D.N.Y. 1985) (holding that the district court had the authority to enjoin arbitration). See also, e.g., Davis v. Skarnulis, 827 F.Supp. 1305, 1307 (E.D. Mich. 1993) (court enjoined parties from proceeding with NASD arbitration pending jurisdictional determinations).

Absent a stay, the private arbitrator (who does not have background in constitutional law) -- not this Article III Court -- intends to determine whether all Bears fans (who are not parties or privities to the POA) entering Soldier Field (over 500,000 persons in 2006 alone) will be subject to suspicionless pat-down searches at a publicly owned stadium paid for with taxpayer funds.[3] Having an arbitrator make such a far-reaching decision of great public interest violates both Article III and the spirit of the Federal Arbitration Act because arbitrators: (1) do not have "a general charter to administer justice for a community which transcends the parties" and the agreement from which the arbitrator derives her authority, see Alexander v. Gardener-Denver Co., 415 U.S. 36, 53 (1974); and (2) "cannot provide [an] adequate substitute for a judicial proceeding in protecting . . . constitutional rights, McDonald v. City of West Branch, Michigan, 466 U.S. 284, 290 (1984), as Title III "courts remain . . . the ultimate protectors of constitutional rights." Chicago Teachers Union v. Hudson, 475 U.S. 292, 307 n.20 (1986).[4]

Additionally, the fact that the parties have other, non-constitutional disputes, is irrelevant because the CPD did not raise these issues in its Complaint for Declaratory Judgment. See Beckman Instruments, Inc., 433 F.2d at 63 (affirming decision to stay arbitration of ancillary issues pending a ruling on the issue actually before the court in the plaintiff's complaint for declaratory judgment). The one issue before this Court (and the only issue raised in the CPD's Complaint for Declaratory Judgment) is a purely legal constitutional issue affecting hundreds of

---

[3] A copy of the arbitrator's curriculum vitae is attached as App. Ex. D.

[4] See also Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 737 (1981) (regardless of the existence of an arbitration agreement, "not all disputes . . . are suited for binding resolution" by an arbitrator); Johnson v. Univ. of Wisconsin, 783 F.2d 59, 62 (7th Cir. 1986) (in noting that arbitrations do not generally have preclusive effect in section 1983 actions, the Seventh Circuit held that "the arbitrator's expertise is in the law of the shop, not the law of the land," whose "authority derives solely from the contract"); Bromley v. Michigan Ed. Assoc., 82 F.3d 686, 692 (6th Cir. 1996) ("[t]he statutory right to have an Article III court adjudicate suits . . . for vindication of rights secured by the First Amendment . . . cannot be conducted by a privately appointed decision maker").

thousands of people not parties or privities to the POA -- whether the Fourth Amendment prohibits the CPD from using tax dollars to pay for the mass suspicionless searches at Soldier Field on Bears game days.

If this Court follows the well reasoned and supported decisions of the Florida courts, which dealt with the identical situation presented here to this Court by the CPD -- a municipal corporation paying for mass suspicionless pat-down searches at the local publicly owned stadium on NFL game days -- then this Court must hold that the Fourth Amendment prohibits the CPD from conducting and paying for the searches. In enjoining the Tampa Bay municipal owner from paying for the suspicionless pat-downs, the federal court, based on testimony from the "NFL's Director of Event Security" and the FBI, held that there has **never been a "substantial real risk of a terrorist threat to an NFL stadium."** (App. Ex. A at 14-18) (Emphasis added). Accordingly, unless the Bears can bring in any evidence (since the District Court handed down its ruling on July 28, 2006) of an "actual" "particularized threat" to Soldier Field, this Court need only make a purely legal decision, without any factual findings.

Moreover, if this Court does not temporarily stay the arbitration and the arbitrator, as she stated she intends to do, rules on the constitutionality of the CPD paying for the mass suspicionless pat-downs, despite the fact that the Bears did **not request** arbitration on any constitutional issues, the CPD and the Bears may end-up back before this Court because the arbitrator's decision will not preclude the hundreds of thousands of fans (not parties or privities to the POA), who will be subject to the unconstitutional searchers, from seeking to enjoin the enforcement of the mass pat-downs, as a fan in Tampa Bay successfully did (App. Exs. A and B). See McDonald, 466 U.S. at 290-91 (reversing lower court's decision to grant preclusive effect to arbitrator's decision on an alleged First Amendment violation, the Supreme Court held

that the arbitrator's decision did not bar subsequent action under section 1983 for redress of deprivation of First Amendment rights); Alexander, 415 U.S. at 53 (holding that arbitrators do not have authority to bind those not parties or privities to the arbitration agreement). See also Wyatt-Doyle & Butler Engineers v. City of Eufaula, 13 P.3d 474, 477 (Okla. 2000) (holding that a municipality "cannot waive a constitutional right belonging exclusively to the people by submitting the question to an arbitrator").

Additionally, a temporary stay is necessary here under the "permeation doctrine." Where, as here, non-arbitrable issues "permeate the entire case, such that an arbitrator would find it difficult to avoid determining the [non-arbitrable] issues in deciding the contract dispute," a district court should temporarily stay the arbitration pending the court's resolution of the non-arbitrable claims. See Applied Digital Tech., Inc. v. Continental Caus. Co., 576 F.2d 116, 117 (7th Cir. 1978). The basis for staying arbitration under the permeation doctrine is that equity and efficiency demand that the federal court decide the non-arbitrable claims first because the arbitrator's decision on these issues will not carry any preclusive effect. See Big Apple Cookie Co. v. Springwater Cookie Co., 517 F. Supp. 367, 368-69 (S.D. Ohio 1981).

While the "permeation doctrine" generally applies to non-arbitrable anti-trust issues, the reasoning underlying the doctrine applies here because, as detailed above, like anti-trust issues, the arbitrator's decision here will not preclude a separate action on the constitutionality of the CPD paying for the mass suspicionless pat-downs. Therefore, because the overriding Fourth Amendment issue before this Court so permeates the contractual dispute the arbitrator will not be able to decide who under the POA is responsible for paying for the pat-downs at Soldier Field until this Court determines whether the Fourth Amendment precludes the CPD from even

7

undertaking such an obligation. Accordingly, this Court should temporarily stay the arbitration for this reason also.

Moreover, a temporary stay of this matter will in no way prejudice the Bears. The CPD is willing to have this Court immediately enter an expedited briefing schedule so that this Court can make a decision on the Fourth Amendment issue as soon as practicable, which given the well reasoned and supported analogous Florida cases (App. Exs. A and B), will require only a purely legal decision without any factual findings by this Court.

## CONCLUSION

WHEREFORE, for the reasons set forth above, in the attached Exhibits contained in the concurrently filed Appendix, and in its Complaint for Declaratory Relief, the CPD respectfully requests that this Court temporarily stay arbitration between the CPD and the Bears, pending this Court's decision on the CPD's pending Complaint for Declaratory Judgment as to whether the Fourth Amendment prohibits the CPD (as a municipal corporation) from conducting and/or using taxpayer funds to pay for mass suspicionless pat-down searches at Soldier Field

Dated: August 4, 2006                              CHICAGO PARK DISTRICT

                                                   By:   /s/ Aaron H. Stanton
                                                           One of its attorneys

Richard W. Burke
George J. Lynch
Aaron H. Stanton
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Avenue, 22nd Floor
Chicago, Illinois 60611-3607
(312) 840-7000 (Telephone)
(312) 840-7900 (Facsimile)
Attorney No. 41704

404503.5