# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE CHICAGO PARK DISTRICT, an Illinois Municipal Corporation<br><br>        Plaintiff,<br><br>        v.<br><br>THE CHICAGO BEARS FOOTBALL CLUB, Inc., a Delaware Corporation, and THE CHICAGO BEARS STADIUM, LLC, a Delaware Limited Liability Company,<br><br>        Defendants. | Case No. 06-CV-3957<br><br>Honorable Blanche M. Manning<br>Magistrate Judge Schnenkier |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO STAY ARBITRATION

There is no "emergency" here. The parties agreed to submit this dispute to an expedited arbitration, if they could not reach an agreement on it nearly eight months ago. Although when it agreed to arbitration, the CPD invariably knew that it would raise a contract defense of unconstitutionality, it did not then claim this defense to be non-arbitrable. Only now after the arbitration has commenced, an arbitrator has been selected, and a hearing is imminent, does the CPD bring this emergency motion for a stay. And although the CPD filed this suit on July 21, 2006, knowing that arbitration would be moving forward expeditiously, it still sat on its hands for fourteen days before filing this "emergency" motion. The CPD's arguments not only lack support in the law, but its overall conduct smacks of bad faith.

Nor is any "emergency" created, as CPD seeks to imply, by the potential impact of the parties' dispute on the public. This case – and the arbitration – are about whether the CPD is obligated to provide and/or pay for certain security measures at Soldier Field; this dispute is not about whether a ticketholder may challenge those security measures at Solder Field on

Fourth Amendment grounds. No ripe Fourth Amendment issue will arise unless and until the arbitrator rules against the CPD on that issue and a ticketholder decides to bring suit. In short, this is ultimately a dispute about money, and nothing here requires "emergency" intervention by this Court.

## BACKGROUND

The present dispute first arose in August 2005, when the Bears requested that the CPD provide pat-down security at NFL games at Soldier Field. The Bears asserted that the parties' Permit and Operating Agreement ("POA"), allocated responsibility for such security costs to the CPD. The CPD refused, and a dispute ensued.

The parties later reached an interim agreement under which the Bears were responsible for providing pat down security checks at Soldier Field for the final two games of the 2005 Season. [Ex. 1 ¶ 1.] That agreement, dated December 8, 2005, also contains an express provision stating that, in the event the dispute over whether the CPD "must provide pat down security checks at Chicago Bears home games" could not be resolved through good faith negotiations, then this "disagreement may be submitted by either party … to resolution by Expedited Arbitration," as provided for in the POA. [Id. ¶ 5.]

The CPD knew of the Tampa state court decision when the parties agreed to expedited arbitration, and indicated at that time that pat-downs could raise a constitutional question. At least since May, the CPD has contended that its compliance with the Bears' contractual demand would result in the CPD violating the Fourth Amendment.[1] The CPD never suggested during the parties' negotiations over the interim agreement that any of the CPD's

---

[1] The CPD does not -- and could not -- argue that pat-downs, if paid for by the Bears, violate the Fourth Amendment.

contract defenses – including that of unconstitutionality – should not, or could not, be decided through the agreed expedited arbitration procedure.

After continued negotiations failed to reach a resolution, the Bears commenced an expedited arbitration, pursuant to the terms of the interim agreement and the POA, by filing a demand with the American Arbitration Association ("AAA") on March 27, 2006; they later amended that demand on April 12. [Ex. 2.] During the next two and half months, the parties worked to select an arbitrator. From the inception of the arbitration in March through the end of May, the CPD formally stated no objection about the scope of the arbitration.[2]

The CPD's written communication to the AAA of an objection to the scope of the arbitration occurred in a letter dated July 5, 2006, in which the CPD's counsel asserted that the arbitration should only proceed after there had been a judicial determination of the CPD's constitutionality defense. [Ex. 3.] On July 21, 2006, the CPD filed suit, asking this Court to determine whether a requirement that the CPD pay for the pat-downs would be unconstitutional. The Complaint concedes that the constitutionality of the pat-downs will be at issue only if the arbitrator decides that the CPD is responsible under the contract for providing or paying for them. [Compl., ¶ 18.]

In the intervening period, the parties' selection of an arbitrator became final, and following a conference with the arbitrator, a hearing date was set for August 9 in accordance with the expedited arbitration procedures of the POA. The Bears have undertaken extensive efforts to prepare to meet the arbitrator's schedule, including preparing witnesses to testify.

---

[2]   In fact, the CPD did not submit to the AAA a timely objection either to the jurisdiction of the arbitrator or to the arbitrability of any issue involved in this dispute.

## ARGUMENT

The CPD makes four principal arguments to support its request for a motion to stay the arbitration (not one of which demonstrates the need for emergency relief). None of these arguments has merit, and all should be rejected. Moreover, the equities weigh strongly against granting the CPD the relief it seeks, because it is clear the CPD only filed this emergency motion to further delay resolution of the parties' dispute through the mechanism to which the CPD itself has already agreed.

First, the CPD contends that the "Bears did not demand arbitration on the constitutional issue." CPD Br. at 3. This argument is disingenuous at best. The Fourth Amendment arises in this dispute only as an affirmative defense, and the Bears do not bear the burden of alleging or proving the CPD's affirmative defenses. See Guzell v. Kasztelanka Café and Restaurant, Inc., 408 N.E.2d 1124 (Ill. App. Ct. 1980). To prevail in arbitration on this defense, it is the CPD that must allege and then prove by clear and convincing evidence that its performance under the contract would be illegal. Id.; see AAA Commercial Mediation and Arbitration Rules, Art. 3. [Ex. 4.]

Second, the CPD alleges that the claim alleged in its federal complaint raises a "far-reaching constitutional issue of great public importance" that should not be decided in an "expeditious and haphazard fashion." The CPD fails, however, to cite any authority to support the proposition that arbitration may be stayed on the facts presented here. There is no general "great public importance" rule of non-arbitrability, and the sole case relied on by CPD is inapposite. In Beckman Instruments, Inc. v. Technical Development Corp., the Seventh Circuit affirmed the district court's stay of an arbitration of a dispute under a patent license. 433 F.2d 55, 62-63 (7th Cir. 1970). But in that case, the court concluded that "the parties did not

expressly provide for arbitration of patent validity questions." Id. at 62-63.[3]  Here, the existence of an agreement to arbitrate expeditiously is undisputed.

Moreover, the CPD is not seeking to vindicate its own federally-protected interests; rather it purports to vindicate the interests of hundreds of thousands of ticketholders. Tellingly, the CPD fails to cite any authority for the proposition that it has standing to bring such a suit – and in fact the Supreme Court has made clear that it does not.  Alderman v. United States, 394 U.S. 165 (1969) (Fourth Amendment rights may not be asserted vicariously).[4]

Third, the CPD argues that the arbitration procedures to which it agreed, and the arbitrator it agreed upon, are inadequate to resolve its constitutional defense.  Vague arguments of this kind about the "competence of arbitral tribunals" to decide important disputes are rejected by modern courts.  Cf. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc. 473 U.S. 614, 627 (1985) (rejecting similar "competence" argument in holding complex federal antitrust claims to be arbitrable).  Moreover, even if there were any merit in such arguments, the CPD has long since waived them.  Having agreed to an expedited arbitration with full knowledge of its anticipated defenses, the CPD cannot now collaterally attack that process as inadequate. Generica Ltd. v. Pharmaceutical Basics, Inc., 125 F.3d 1123, 1130 (7th Cir. 1997).  Similarly, the CPD has never challenged the credentials of this arbitrator and has never requested that the AAA provide an arbitrator with any special expertise in constitutional issues.  These arguments have accordingly also been waived.

---

[3]   Moreover, Beckman's suggestion that questions of patent validity are non-arbitrable has been expressly overruled by statute.  See 35 U.S.C. § 294 (a).

[4]   The CPD's silence on the issues raised in the Bears earlier-filed motion to dismiss speaks volumes about the absence of support for the CPD's position.  The CPD fails to address the questions of standing, ripeness, or subject-matter jurisdiction that must first be resolved by this Court.  Shockley v. Jones, 823 F.2d 1068, 1070 (7th Cir. 1987).

Fourth, the CPD argues that this Court should apply the "permeation doctrine," a narrowly-carved exception to the Federal Arbitration Act. See Applied Digital Tech., Inc. v. Continental Cas. Co. 576 F.2d 116, 117 (7th Cir. 1978). But the CPD cites no instance where any court has ever applied the "permeation doctrine" outside the context of antitrust cases. CPD Br. at 7.[5] Rather, in deciding whether a federal claim may be arbitrated, the Supreme Court directs courts to apply a two-part test. See Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 90 (2000). The first part asks whether the "parties agreed to submit their claims to arbitration." Id. If so, the Court must decide "whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Id. Here, it is clear that the parties agreed to arbitrate the dispute, and the CPD offers no authority for the proposition that Congress has evinced an intent to preclude a waiver.[6]

Finally, the CPD's motion fails on the equities. Although the CPD argues that the Court should decide this motion on an emergency basis, it fails to make any showing that an emergency exists. See Local Rule 77.2(a). Nothing in CPD's motion demonstrates that the CPD will be seriously and irreparably harmed should the arbitration proceed. Rather, the CPD argues only that if the arbitrator decides against it in the arbitration, and if some unknown third-party decides to file suit, then the CPD may be subject to additional litigation for which it for which it could be found liable. Such highly speculative harm is insufficient to justify emergency relief.

Nor is any imminent harm threatened to third parties. The very authority CPD relies on, CPD Br. at 6, confirms that, in the event the arbitrator finds against the CPD, nothing

---

[5] Indeed, the viability of this doctrine is in substantial question even in the antitrust context. See Mitsubishi Motors, 473 U.S. at 627-40 (finding antitrust claims to be arbitrable).

[6] To the contrary, Congress has expressly approved the arbitrability of civil rights claims. See Shaw v. DLJ Pershing, 78 F. Supp.2d 781 (N.D. Ill. 1999).

would bar a ticketholder from bringing suit to challenge the constitutionality of such CPD-funded pat-downs.  See McDonald v. City of West Branch, 466 U.S. 284, 290-91 (1984) (concluding that arbitration did not foreclose suit on federal claim).

Furthermore, the CPD's motion to stay smacks of bad faith.  At the time it agreed to arbitrate this dispute eight months ago the CPD was aware of each and every fact that it claims gives rise to this motion.  If this dispute is non-arbitrable as the CPD now contends, the CPD fails to explain why it agreed to arbitration in the first place, why it delayed so long before bringing this suit, and why just a day before the hearing it alleges that the dispute requires emergency intervention by this Court.  Further delay will only prejudice the Bears' rights to an expedited resolution of this dispute, as the parties agreed, and, therefore, this Court should deny the CPD's request for emergency relief.

## **CONCLUSION**

For the reasons stated, the Bears respectfully request that the CPD's motion to stay the arbitration be denied.

Dated:  August 7, 2006                     Respectfully submitted,

The Chicago Bears Football Club, Inc. And
The Chicago Bears Stadium, LLLC

By: */s/ Patricia J. Fokuo*
John N. Scholnick (ARDC #3125176)
Jay Williams (ARDC # 6195934)
Patricia J. Fokuo (ARDC #6277431)
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois 60606
(312) 258-5500 (telephone)
(312) 258-5600 (facsimile)

## CERTIFICATE OF SERVICE

I, Patricia J. Fokuo, an attorney, hereby certify that I have served a copy of the foregoing **Defendants' Opposition To Plaintiff's Emergency Motion To Stay Arbitration**, by electronic filing and via messenger, to the persons listed below on this 7th day of August, 2006.

Richard W. Burke
George J. Lynch
Aaron H. Stanton
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Ave., 22nd Floor
Chicago, Illinois 60611-3607

                                              */s/ Patricia J. Fokuo*
                                                  Patricia J. Fokuo

CH2\ 1492310.2