# EXHIBIT 2

CH1\ 4014096.1

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

COMMERCIAL ARBITRATION RULES
DEMAND FOR ARBITRATION

| | | | | | |
|---|---|---|---|---|---|
| *MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box.* ☐ *There is no additional administrative fee for this service.* ||||||
| Name of Respondent<br>Chicago Park District ||| Name of Representative (if known)<br>Richard W. Burke |||
| Address<br>541 North Fairbanks Court ||| Name of Firm (if applicable)<br>Burke, Warren, MacKay & Serritella, P.C. |||
| ||| Representative's Address<br>330 North Wabash Avenue |||
| City<br>Chicago | State<br>IL | Zip Code<br>60611- | City<br>Chicago | State<br>IL | Zip Code<br>60611- |
| Phone No.<br>(312) 742-7529 || Fax No.<br>(312) 742-5314 | Phone No.<br>(312) 840-7000 || Fax No.<br>(312) 840-7900 |
| Email Address:<br>jessica.faulkner@cpp.com ||| Email Address:<br>rburkesr@burkelaw.com |||

The named claimant, a party to an arbitration agreement dated August 1, 2001, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE

See Attached

| | |
|---|---|
| Dollar Amount of Claim $75,000/150,000.00 | Other Relief Sought: ☐ Attorneys Fees  ☐ Interest<br>☐ Arbitration Costs  ☐ Punitive/Exemplary  ☒ Other Declatory |

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the fee schedule in the rules for the appropriate fee) $1,800.00

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:

Hearing locale Chicago, IL    (check one) ☒ Requested by Claimant  ☐ Locale provision included in the contract

| | |
|---|---|
| Estimated time needed for hearings overall:<br>_____ hours or 1 _____ days | Type of Business: Claimant __professional football club__<br>Respondent __governmental entity__ |

Is this a dispute between a business and a consumer? ☐ Yes ☒ No   Does this dispute arise out of an employment relationship? ☐ Yes ☒ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range?  Note: This question is required by California law. ☐ Less than $100,000  ☐ $100,000 - $250,000  ☐ Over $250,000

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in (check one)  ☐ Atlanta, GA  ☒ Dallas, TX  ☐ East Providence, RI  ☐ Fresno, CA  ☐ International Centre, NY, with a request that it commence administration of the arbitration.  Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

| | | | |
|---|---|---|---|
| Signature (may be signed by a representative)    Date:<br>*John Scholnick by CWH* ||| Name of Representative<br>Gary Mowder   John Scholnick |
| Name of Claimant<br>Chicago Bears Football Club, Inc. ||| Name of Firm (if applicable)<br>SCHIFF HARDIN LLP |
| Address (to be used in connection with this case)<br>Halas Hall at Conway Park, 1000 Football Drive ||| Representative's Address<br>6600 Sears Tower |
| City<br>Lake Forest | State<br>IL | Zip Code<br>60046- | City<br>Chicago | State<br>IL | Zip Code<br>60606- |


| City<br>Lake Forest | State<br>IL | Zip Code<br>60046- | City<br>Chicago | State<br>IL | Zip Code<br>60606- |
|---|---|---|---|---|---|
| Phone No.<br>(847) 295-6600 || Fax No.<br>(847) 295-8986 | Phone No.<br>(312) 258-5500 || Fax No.<br>(312) 258-5600 |
| Email Address:<br>do not have e-mail ||| Email Address:<br>gmowder@schiffhardin.com |||

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA.  Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online.  AAA Customer Service can be reached at 800-778-7879

## **NATURE OF THE DISPUTE**

Pursuant to Article 32 of the Permit and Operating Agreement between the Chicago Park District and the Chicago Bears Football Club, Inc., dated as of August 1, 2001, (which Agreement shall hereinafter be referred to as the "POA") and the further agreements of the parties regarding resolution of the dispute described herein, the Chicago Bears Football Club, Inc. (hereinafter the "Bears") request that the dispute described herein be decided by Expedited Arbitration. A copy of Article 32 of the POA, together with the Provisional Agreement for Pat Down Security Checks at Chicago Bears Home Games and the February 16, 2006 letter confirming the extension for initiating this arbitration, are enclosed for your convenience.

The POA is the agreement between the Bears and the Chicago Park District that, among other things, allocates between the parties the responsibilities and costs for operations in connection with the Bear's use of Soldier Field for home games.

This dispute relates to which of the parties is required under the terms of the POA to pay for the costs of certain security measures mandated by the National Football League (hereinafter the "NFL") to be performed at all NFL games.

On or about August 18, 2005, the Commissioner of the NFL issued a mandate to all member clubs requiring them to have instituted at all NFL games a pat down procedure. A copy of the memorandum to all clubs dated August 18, 2005 issuing the mandate is attached hereto at Exhibit 1. All NFL clubs were to have instituted pat down procedures for all games no later than September 25, 2005.

The pat down policy was instituted by the NFL in light of the events of September 11, 2001 and the recognition that sporting events taking place in large stadiums could be potential targets of terrorist attacks. Therefore, the NFL mandated that pat down screening be undertaken at all football games to ensure the safety of the people attending those games.

Following the NFL Commissioner's issuance of the August 18, 2005 memorandum the Bears notified the Chicago Park District that under the terms of the POA the Chicago Park District was responsible for making arrangements for, establishing procedures for (consistent with the NFL's requirements) and paying for the costs of pat down procedures that were mandated for games by the NFL Commissioner. The Chicago Park District has denied any responsibility for the costs of establishing and implementing pat down procedures at Soldier Field for Bears home games.

Although the parties entered into a provisional agreement for the 2005-2006 football season for the implementation of the NFL's pat down policy, there has been no permanent resolution of the dispute over which party is responsible under the terms of the POA for the payment of costs for pat down screening. The parties have, therefore, agreed to submit this dispute to Expedited Arbitration under Article 33 of the POA, subject to such additional arbitration procedures as the parties may agree to.

In general, the Chicago Park District is obligated under the POA to provide Soldier Field, a first-class facility, for use by the Bears for home games. This facility is to be provided for such use in accordance with all requirements, whether mandated by the NFL or otherwise, needed for the presentation of an NFL game. To the extent that the Bears are obligated to pay for particular costs and expenses associated with the use of Soldier Field, such costs and expenses are set forth in the POA. The costs associated with mandates of the NFL with regard to security procedures to be implemented for all NFL games would fall under the Chicago Park District's general obligations in the POA.

In addition, under Article 22 of the POA, which is entitled "Game Day Costs, Expenses and Responsibilities," the Chicago Park District is obligated to pay for costs associated with the operation of Solider Field on "Game Days." More specifically, paragraph 22.2.1 provides that "[i]n general, the CPD shall be responsible for the performance and payment of Game Day Expenses." It is the Bears' position that among the "Game Day Expenses" for which the Chicago Park District is responsible is the cost of implementing pat down screening, consistent with the NFL's mandate and guidelines.

The Bears reserve the right to make further submissions in support of the claim at the hearing of this arbitration and at such other time and in such other manner as the parties may agree.

CH1\4513175.1

# MEMORANDUM

**TO:** Chief Executives and Club Presidents

**FROM:** Commissioner Tagliabue

**DATE:** August 18, 2005

**SUBJECT:** Stadium Security on Game Days:
Mandatory Pat Down Screening of Fans Attending Games

At the August 10th Special League Meeting in Chicago, the membership endorsed the recommendation of the League's Security Department that the mandatory security measures for all clubs should be expanded to include "pat downs" of fans to be carried out by properly trained security personnel in accord with guidelines shortly to be distributed by the League's Security Department.

As discussed at the Chicago meeting, a large number of clubs are already screening patrons attending games using "pat down" procedures. All other clubs should have already trained security personnel to promptly implement such security measures. All clubs putting such measures into practice for the first time during the upcoming season will be given a reasonable period for re-training to affect the mandatory screening procedures now to be applied. Absent highly unusual circumstances, we would expect that these procedures would be fully implemented at all stadiums by no later than the third weekend of the regular season, i.e., by September 25th.

An important aspect of employing these procedures will be to provide clear, advance notice to fans attending games. This can be accomplished in a variety of ways, including through press releases that provide notice in local media ; mailings to season ticket holders; notices on team websites and in other team publications (such as weekly team newspapers); public address announcements at upcoming games; and signage clearly posted in parking lots or at the approaches to gates in stadiums.

We will shortly distribute to each club suggested language for inclusion in club media releases and other notices to fans. For your information, we are attaching an illustrative release issued recently by the Pittsburgh Steelers relative to these stadium screening and pat down procedures.



EXHIBIT 1
ALL-STATE® INTERNATIONAL

The League's Security Department will shortly distribute to all clubs a detailed memorandum setting forth guidelines to be followed by all clubs in implementing these security measures.

If you wish to discuss any aspect of this in the meantime, please contact Milt Ahlerich or Jeff Pash so that our Security Department can be of assistance in implementing this policy.


PT:gd


SCHIFFHARDIN LLP

6600 SEARS TOWER
CHICAGO, ILLINOIS 60606
t 312.258.5500
f 312.258.5600
www.schiffhardin.com

John N. Scholnick
(312) 258-5813
jscholnick@schiffhardin.com

April 12, 2006

**VIA FACSIMILE**

Ms. Candi E. Harris
Case Manager
American Arbitration Association
13455 Noel Road
Suite 1750
Dallas, TX 75240

Re: 51 196 00498 06
Chicago Bears Football Club, Inc.
and
Chicago Park District

Dear Ms. Harris:

Please find enclosed an Amended Statement of the Nature of the Dispute which is to be attached to the Demand for Arbitration submitted by the Chicago Bears Football Club, Inc. Please substitute this Amended Statement of the Nature of the Dispute for the description of the Nature of the Dispute that was originally attached to the Demand for Arbitration.

By copy of this letter to Mr. Richard W. Burke I have delivered a copy of the Amended Statement of the Nature of the Dispute to counsel for the Chicago Park District.

If you should have any questions about this, please contact me.

Sincerely,

John N. Scholnick

Attachment
cc: Richard W. Burke, Esq. (via facsimile)
Gary Mowder, Esq.

CH1\4524938.1

Matter No. 51 196 00498 06

Chicago Bears Football Club, Inc.
and
Chicago Park District

## AMENDED STATEMENT OF THE NATURE OF THE DISPUTE

Pursuant to Article 32 of the Permit and Operating Agreement between the Chicago Park District and the Chicago Bears Football Club, Inc., dated as of August 1, 2001, (which Agreement shall hereinafter be referred to as the "POA") and the further agreements of the parties regarding resolution of the dispute described herein, the Chicago Bears Football Club, Inc. (hereinafter the "Bears") request that the dispute described herein be decided by Expedited Arbitration. A copy of Article 32 of the POA, together with the Provisional Agreement for Pat Down Security Checks at Chicago Bears Home Games and the February 16, 2006 letter confirming the extension for initiating this arbitration, are enclosed for your convenience.

The POA is the agreement between the Bears and the Chicago Park District that, among other things, allocates between the parties the responsibilities and costs for operations in connection with the Bear's use of Soldier Field for home games.

This dispute relates to which of the parties is required under the terms of the POA to pay for the costs of certain security measures mandated by the National Football League (hereinafter the "NFL") to be performed at all NFL games.

On or about August 18, 2005, the Commissioner of the NFL issued a mandate to all member clubs requiring them to have instituted at all NFL games a pat down procedure. A copy of the memorandum to all clubs dated August 18, 2005 issuing the mandate is attached hereto at Exhibit 1. All NFL clubs were to have instituted pat down procedures for all games no later than September 25, 2005.

The pat down policy was instituted by the NFL in light of the events of September 11, 2001, the recognition that sporting events taking place in large stadiums could be potential targets of terrorist attacks, and the high visibility and national attention associated with NFL games (America's number one spectator sport with broad television coverage). Therefore, the NFL mandated that pat down screening be undertaken at all football games to ensure the safety of the people attending those games.

Following the NFL Commissioner's issuance of the August 18, 2005 memorandum the Bears notified the Chicago Park District that under the terms of the POA the Chicago Park District was responsible for making arrangements for, establishing procedures for (consistent with the NFL's requirements) and paying for the costs of pat down procedures that were mandated for games by the NFL Commissioner. The Chicago

Park District has denied any responsibility for the costs of establishing and implementing pat down procedures at Soldier Field for Bears home games.

Although the parties entered into a provisional agreement for the 2005-2006 football season for the implementation of the NFL's pat down policy, there has been no permanent resolution of the dispute over which party is responsible under the terms of the POA for the payment of costs for pat down screening. The parties have, therefore, agreed to submit this dispute to Expedited Arbitration under Article 32 of the POA, subject to such additional arbitration procedures as the parties may agree to.

In general, the Chicago Park District is obligated under the POA to provide Soldier Field, a first-class facility, for use by the Bears for home games. This facility is to be provided for such use in accordance with all requirements, whether mandated by the NFL or otherwise, needed for the presentation of an NFL game. To the extent that the Bears are obligated to pay for particular costs and expenses associated with the use of Soldier Field, such costs and expenses are set forth in the POA. The costs associated with mandates of the NFL with regard to security procedures to be implemented for all NFL games would fall under the Chicago Park District's general obligations in the POA.

Pursuant to Article 25 of the POA, which is entitled "Security and Crowd Control," the Chicago Park District is obligated to pay for costs associated with security and crowd control on "Game Days." More specifically, paragraph 25.1 provides that "[e]xcept for locker rooms, Team Areas and the Field, the CPD shall be responsible for the performance and payment of security and crowd control on Game Days." Since pat down screening does not involve the locker rooms, the Team Areas and the Field, the Chicago Park District is responsible for the performance and payment of such screening.

In addition, under Article 22 of the POA, which is entitled "Game Day Costs, Expenses and Responsibilities," the Chicago Park District is obligated to pay for costs associated with the operation of Solider Field on "Game Days." More specifically, paragraph 22.2.1 provides that "[i]n general, the CPD shall be responsible for the performance and payment of Game Day Expenses." It is the Bears' position that among the "Game Day Expenses" for which the Chicago Park District is responsible is the cost of implementing pat down screening, consistent with the NFL's mandate and guidelines.

The Bears reserve the right to make further submissions in support of the claim at the hearing of this arbitration and at such other time and in such other manner as the parties may agree.

CHI\4518195.1